The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

---

ELLA A. SAUNDERS

*v.*

THE CITY OF CHICAGO.

*Opinion filed October 24, 1904.*

1. PLATS—*vacation of statutory plat must be in compliance with statute.* Neither the whole nor any portion of a statutory plat can be vacated except in compliance with the statute authorizing such vacation.

2. SAME—*act of 1847, concerning vacation of plats, construed.* Under the act of 1847, concerning the vacation of plats, (Laws of 1847, p. 166,) the proprietor of a platted tract might vacate the entire plat, or any portion thereof, by proper writing, at any time before the sale of a single lot therein, and after the sale of a lot or lots the vacation might be had by all the owners of the lots joining with the proprietor in the execution of the writing.

3. SAME—*when proprietor cannot vacate portion of a plat after sale of a lot.* Section 3 of the act of 1847, concerning vacation of plats, does not authorize the proprietor of a platted tract in which a lot or lots have been sold, to vacate any portion of the plat without the owners of the lots joining in the writing, notwithstanding the proprietor owns all the lots in the portion sought to be vacated. (*Littler* v. *City of Lincoln,* 106 Ill. 353, and *Chicago Pressed Brick Co.* v. *City of Chicago,* 138 id. 628, distinguished.)

4. SAME—*city's right in street not affected by unauthorized vacation of statutory plat.* An attempted vacation of a statutory plat in a manner not authorized by statute does not affect the rights of the municipality in the streets sought to be vacated.

RICKS, C. J., and WILKIN and CARTWRIGHT, JJ., dissenting.

APPEAL from the County Court of Cook county; the Hon. R. A. RUSSELL, Judge, presiding.

ROBERT E. PENDARVIS, for appellant.

ROBERT REDFIELD, and FRANK JOHNSTON, Jr., (EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a proceeding in the county court of Cook county to confirm a special assessment for paving Loomis street, from Garfield boulevard to Sixty-third street, in the city of Chicago. The appellant, whose land was sought to be assessed, appeared and filed objections to the confirmation of the assessment. The objections were overruled, the assessment was confirmed, and appellant has prosecuted an appeal to this court.

On the 8th day of April, 1870, one Joshua Bell subdivided the west half of the south-west quarter of section 17, town 38, north, range 14, east, of which he was the owner, into lots, blocks, streets and alleys, and executed and acknowledged a plat thereof, and on May 2, 1870, caused the plat, with the certificate of the surveyor, to be recorded in the office of recorder of deeds in and for Cook county. On the 20th day of February, 1871, said Bell sold and conveyed blocks 1 and 10 of said subdivision or addition to the city of Chicago to one Henry Mueller. On March 5, 1871, Bell executed, acknowledged and filed for record an instrument purporting to vacate all that part of the plat north of Sixty-first street. On the 6th day of August, 1872, Bell executed a deed purporting to convey to one Henry Saunders the east half of the north-east quarter of the north-west quarter of the south-west quarter of section 17, being a part of that portion of the said subdivision described in the instrument which purported to be a deed of vacation of a portion of the plat. Said Henry Saunders, by his last will and testament, devised the same tract conveyed to him by said Bell, to the appellant. The following map shows the sub-

division as originally platted, (except that the lots into which the blocks were subdivided are not shown,) the blocks (9 and 10) which were sold by Bell to Mueller, and the portion of the plat attempted to be vacated:

The ordinance provided that the roadway of Loomis street should be paved with blast-furnace slag and crushed limestone and be curbed with sandstone curbstones, and that the cost of the improvement should be paid by special assessments on the property benefited by the improvement.

The premises, as described in the conveyance from Bell to Saunders and in the devise in the will of Saunders to the appellant, includes block No. 1 on the plat, that part of Loomis and Fifty-ninth streets on which block 1 abutted, and the east half of that part of Bishop street and the north half of that part of West Sixtieth street on which the block abutted. The appellant insisted the deed of vacation was effectual to divest all rights that had been created by the execution and recording of the plat, and that she was the owner of the territory alleged to constitute all that part of Loomis street from the northern limits of West Fifty-ninth street to the center line of West Sixtieth street, and that the city of Chicago had no power to improve this territory as one of the public streets of the city. It is conceded by the appellant that Loomis street, throughout its length and breadth, is one of the public streets of the city unless the instrument executed and filed for record by said Bell, the proprietor of the plat, had legal operation to divest the municipality of the right and title thereto, which had passed from him to it by the execution and recording of the plat.

Neither the whole nor any portion of a statutory plat can be vacated except in compliance with the provisions of the statute authorizing plats, or portions of plats, to be vacated. This plat was executed in 1870, and the instrument relied upon to vacate the portion of it which is here involved was executed and recorded in 1871. The right to vacate a plat, or a portion thereof, was then governed by the act of the General Assembly approved

212—14

February 16, 1847, (Laws of 1847, pp. 166, 167,) which reads as follows:

"Sec. 1. That in all cases where persons have heretofore, or may hereafter, lay out towns, or additions to towns, or subdivisions of town lots,˙ and the plats or maps thereof shall have been recorded, they, their heirs, assigns or grantees may, at any time before making sale of any single lot or lots, by executing a writing and causing the same to be recorded in the office in which the plat or map was recorded, declare such map or plat to be vacated; and the execution and recording of such writing shall operate to destroy the force and effect of the recording of the plat or map so vacated, and to divest all public rights in the streets, alleys, commons and public grounds laid down or described in such plat or map; and in cases where any single lot or lots have been sold, the plat or map may be vacated as herein provided, by all the owners of lots joining in the execution of the writing aforesaid: *Provided,* that no such writing shall be recorded until the execution thereof shall have been acknowledged or proved as is or may be required in respect to deeds."

Section 2 has no relation to the question at issue in this cause.

"Sec. 3. Any part of a plat or map of a town, addition or subdivision may be vacated under the provisions and subject to the conditions herein contained."

Section 1 applies, by its express terms, to the vacation of the entire plat, and grants to the proprietor of the plat absolute power to vacate the plat and divest all public rights in the streets or alleys at any time before any "single lot or lots" in the plat have been sold, and after a lot or lots have been sold, grants to the proprietor and the owners of such lots as have been sold the power to vacate the plat. The proprietor of a plat has, therefore, no sole power of vacation after he has

invested others, as owners of lots, with an interest in the plat. Section 3 authorizes the vacation of a part or parts of a plat, and provides that a part of a plat may be vacated under the provisions of and subject to the conditions contained in section 1 of the act. The provisions and conditions of section 1 are, that a deed of vacation may be made by the proprietor alone when no lots have been sold in the plat, but if lots have been sold, the deed of vacation must be made by the proprietor and the owner or owners of such lot or lots as have been sold. Applying these provisions and conditions to the vacation of a portion of a plat, the proprietor of the plat possessed the power to vacate any portion of the plat at any time before he had invested others with an interest in a lot or lots shown on the plat, and after any lot or lots had been sold, then the power of vacation resided jointly in the proprietor and the owners of any lot or lots in the subdivision. This construction not only gives to the language employed its natural meaning, but is the only construction which can be given, in justice, to all the persons who are interested in the proposed vacation of parts of a plat.

It is contended that the enactment should be construed to authorize the proprietor of a plat in which others were owners of lots, to vacate any part of the plat in which the proprietor remained the owner of all the lots. This would be to give to the proprietor of the plat the sole right to vacate and close up all streets and alleys in any part of the plat in which he owned all of the lots, without regard to the effect of such closing of the streets and alleys on the property of those who had bought lots from the proprietor in view of and on the faith of the arrangement or system of streets and alleys as set forth on the plat. The true construction recognizes the interest and right of every lot owner in the vacation of any of the streets or alleys on the plat, and

requires that the vacation of a part of the plat can only be accomplished by the joint action of the proprietor and all of the owners of lots in the plat. Lots are sold by the proprietor of the plat, and bought by the purchaser, in view of the system of streets and alleys shown on the plat. The value of a lot depends not only on the fáct that it abuts on a street, but also on the fact that such street connects with other streets, and such other streets with still other streets. A lot has its value, in the eyes of the proprietor as seller and an intending purchaser, in a substantial degreé, on the plan and system of streets and alleys. No one would purchase a lot in a plat if the proprietor retained the right to vacate all the plat but the lot and the street in front of it. Section 1 of the act of 1847 denies to the proprietor the individual right to vacate the entire plat after he has sold a lot thereon, and makes it necessary to a valid vacation that all owners of lots shall join in the proposed vacation. If the owner who has sold lots may at his own pleasure select the parts of a plat in which no lots have been sold and vacate such parts of the plat, he may vacate all parts except what he had sold, and that would be to hold he possessed power to vacate the whole of the plat except the portion he had sold,—a power which section 1 expressly denies to him.' The vacation of a part of a plat must, as section 3 declares, be under the provisions and subject to thé conditions of section 1, and, under section 1, whenever a single lot has been sold the power of vacation no longer abides in thę proprietor alone. One who purchases a lot has an interest in every part of the plat of which his lot is a part, and, aside from the plain meaning of the act, it is clear it could not have been the legislative intent that the proprietor should be allowed to make a plat of his land showing thereon portions of the land set apart for the use of the purchaser of the lot and the public as public streets and

alleys, and to sell lots with reference to such plat and with reference to the advantages of the streets and alleys shown on the plat for the use of the purchasers of lots and the general public, and afterwards, at solely his own pleasure and without the assent of the persons to whom he had so sold lots, vacate all parts of the plat in which he had sold no lots, together with all streets and alleys on such parts to be vacated, and thereby become the private owner of streets and alleys which he represented by his plat were to be kept open for the public use and for the convenience and benefit of the owners of the lots in the plat.

In *Leech* v. *Waugh*, 24 Ill. 229, we said: "The statute [referring to the act of 1847] authorizes the vacation of a town plat before a sale of any of the lots has taken place, but not afterwards. When others become the owners of lots within the addition, they are by that means invested with the right to enjoy the use of its streets and alleys as an incident to their property and cannot be deprived of it in this mode."

Mr. Elliott, in his work on Roads and Streets, (sec. 120,) states: "The plan or scheme indicated on the map or plat is regarded as a unity, and it is presumed, as it well may be, that the public ways add value to all the lots embraced in the general scheme or plan. Certainly, as every one knows, lots with convenient cross-streets are of more value than those without, and it is fair to presume that the original owner would not have donated land for public ways unless it gave value to the lots. So, too, it is just to presume that the purchasers paid the added value, and the donor ought not, therefore, to be permitted to take it from them by revoking part of his dedication." The author notes, however, that the doctrine announced by him is apparently denied, or accepted only in a modified sense, in some jurisdictions, and cites cases in which it is held that the purchaser of

a lot is only entitled to insist upon an outlet to another public street, and other authorities which hold that a purchaser can ask no more than that the street upon which his lot abuts shall be kept open to the first cross-street in each direction. We are unable to understand upon what principle a court could declare that one who had purchased a lot with reference to all the streets and alleys shown on a plat, and paid an enhanced value therefor because of the establishment of such public ways, to and from his lot, should be compelled to submit to the closing up of all the streets and alleys except such as give him an outlet to the first cross-street from his property, except where the street has been vacated by the General Assembly, or an incorporated city or village acting as the representative of the general public.

The rule declared in this State when land is subdivided and platted into lots, blocks, streets and alleys as an addition to a city or village, and the plat is recorded but has not been acknowledged in the manner required by the statute or otherwise fails to comply with the statute, is, that there is no statutory dedication but a common law dedication is effected, and if lots so platted are sold, the dedication of streets and alleys shown on the plat is irrevocable by the proprietor of the plat alone. In *Zearing* v. *Raber*, 74 Ill. 409, speaking of the effect of a common law dedication, we said (p. 411): "If one owning land exhibit a map of it, on which a street is defined though not as yet opened, and building lots be sold by him with reference to a front or rear on that street, or lots he conveyed being described as by streets, (*Scheuler* v. *Commonwealth*, 26 Pa. St. 62, and id. 29,) this is an immediate dedication of that street, and the purchasers of lots have a right to have that street thrown open forever. (*Wyman* v. *Mayor*, 11 Wend. 487; *Livingston* v. *Mayor*, 8 id. 85; and see *Matter of Twenty-ninth and Thirty-ninth Streets*, 1 Hill, (N. Y.) 189, 192.) And this principle is not

limited in its application to the single street on which such lots may be situated. If the owner of land lays out and establishes a town and makes and exhibits a plan of the town, with various plats of spare ground, such as streets, alleys, quays, etc., and sells the lots with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege and advantage which the plan represents as belonging to them as a part of the town, or to their owners as citizens of the town. And the right thus passing to the purchasers is not the mere right that such purchasers may use these streets or other public places according to their appropriate purposes, but a right vesting in the purchasers that all persons whatever, as their occasion may require or invite, may so use them. In other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers that the streets and other public places indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor inconsistent with such use."

In *Earll* v. *City of Chicago*, 136 Ill. 277, the true doctrine was declared to be (p. 285): "That if the owner of land exhibits a map or plan of a town, or addition platted thereon, and on which a street is defined, and sells lots abutting on such street and with clear reference to the plat exhibited, then the purchasers of such lots have a right to have that street remain open forever; and such right is not a mere right that the purchaser may use that street, but is a right vesting in the purchasers that all persons may use it,—that the sale and conveyance of lots according to the plat imply a grant or covenant to the purchasers of lots and their grantees that the public street indicated upon the plat shall be forever open to the use of the public as a public highway, free from all claim or interference of the proprietor, or those claim-

ing under him, inconsistent with such use, and that the owner, and all claiming under him, will be perpetually estopped from denying the existence of the street."

In *Russell* v. *City of Lincoln*, 200 Ill. 511, we held that a plat of an addition to a town signed by the owner's agent was not a good statutory dedication, but that after lots were sold in such plat by reference to the plat and possession given to the purchasers a common law dedication was effected, and the proprietor was without power to withdraw the dedication of any streets or vacate the plat.

If the plat is executed and acknowledged in conformity with the provisions of the statute, the fee in the streets and alleys passes from the proprietor of the plat and becomes vested in the municipality in trust for the public. Primarily, it is within the power of the legislature to determine whether a street or public highway shall be kept open and maintained as a public way or shall be vacated. This plenary power as to streets and alleys has been by the General Assembly delegated to the incorporated cities and villages by paragraph 7 of section 1 of article 5 of the City and Village act. The General Assembly were not, however, unmindful of the rights and interests of the owners of lots to be affected by such vacation. Section 1 of an act entitled "An act to revise the law in relation to the vacation of streets and alleys," (3 Starr & Cur. Stat. 1896, chap. 145, sec. 1, p. 3977,) provides that no city council of any city or board of trustees of any village shall have power to vacate or close any street or alley, or any portion thereof, except upon a three-fourths majority of all the aldermen of the city or trustees of the village board, and that the vote thereon shall be taken by the ayes and noes and entered on the record, and that when property is damaged by the vacation or closing of any street or alley, the damages shall be ascertained and paid as provided by law. The private rights which are protected by this statute are only such as are

other and different from that of other lot owners. (*City of East St. Louis* v. *O'Flynn*, 119 Ill. 200; *City of Chicago* v. *Union Building Ass.* 102 id. 379.) If the vacation of a street by a city council closes a street adjacent to the property of a citizen or one that directly affords access thereto or egress therefrom, it is then regarded that the property of such citizen has been damaged for a public use and that he is entitled to be paid therefor. But if his injury is no different or greater than that of the public, it is *damnum absque injuria*, the maintenance or vacation of the street being a question which the municipality may, as the representative of the public, determine in view of what is regarded to be the general interest of the public. The municipality represents the citizen so far as his general interests are concerned, and acts for and binds him, and he must submit to what is deemed the most beneficial to the general public. But this principle is not involved in the construction of the statute relating to the vacation of the streets of a city or village by the proprietor of a plat. He is acting in his individual right, and not as the representative of the owners of lots whose interests are to be affected by his acts.

The question here presented is whether, under the proper construction of the act of 1847, which has been hereinbefore set forth, it is within the power of the proprietor of a plat who had sold a portion of the platted property with reference to the plat, and at prices enhanced by the advantages to be derived from a system of streets and alleys shown on the plat, to vacate such part or parts of the plat as may best serve his private interests, or whether the power to vacate any of such parts of the plat is given by the statute to all those who own lots on the plat. The extent to which the right of a lot owner is restricted where lawful authorities, acting as the representatives of the general public, including the owners of the lots, have determined, in

furtherance of the interests of the public, to vacate a street or alley, cannot be regarded as a standard wherewith to measure his right when the owners of a part of a platted subdivision desire to vacate such part of the plat, and thereby close streets and alleys therein, for their own private advantage or gain. The principle that every citizen must submit to that which has been determined by the constituted authorities to be for the best interest of all, unless he is affected differently than are other citizens, does not properly enter into consideration in construing the statute of 1847 in order to determine whether, under such statute, the proprietor of a plat or the owners of all the lots in a part of the plat have sole power to vacate such part of the plat and thereby close up and destroy the streets and alleys in such portions of the plat. All owners of lots are interested in the proposed vacation of any part of the plat by a proprietor thereof, and when construing the statute their rights and interests, as against the private rights of the proprietor, must be kept in view in determining whether the statute denies such lot owners any voice in the matter and vests sole power of vacation in the proprietor. The true construction of the statute then is, that the proprietor of a plat who has not invested other persons with title to lots therein, has power to vacate the plat, or any portion thereof, as he may desire, and that after he has sold lots in the plat the power to vacate the whole or any part of the plat rests in all those who are interested in the plat, namely, the proprietor of the plat and the owners of all the platted property.

Counsel is in error in the insistence that the cases of *Littler* v. *City of Lincoln,* 106 Ill. 353, and *Chicago Pressed Brick Co.* v. *City of Chicago,* 138 id. 628, construe the statute under which the proprietor of the plat in this case attempted to vacate a portion of such plat. The statute of 1847, hereinbefore quoted, was in force and controlled

the right of the proprietor of a plat to vacate the whole or any part thereof· at the time the attempted vacation of a part of the plat involved in this case was made. That statute was repealed by the general repealing act approved March 31, 1874, in force July 1, 1874. (3 Starr & Cur. Stat. 1896, pp. 3838, 3842.) Chapter 109 of the statutes enacted and revised in 1874 is devoted to the subject of plats, and sections 6 and 7 of the chapter relate to the vacation of plats and parts of plats. These two sections were in force when the plats were made, the vacation of a portion whereof came before this court for consideration in the cases of *Littler* v. *City of Lincoln*, *supra*, and *Chicago Pressed Brick Co.* v. *City of Chicago*, *supra*. In those cases sections 6 and 7 were construed to authorize any part of a plat to be vacated by the owner of the plat, if such owner was the proprietor of all of the lots in the part of the plat so proposed to be vacated. The phraseology of said sections 6 and 7 of the act of 1874 and of sections 1 and 3 of the act of 1847 is not the same. The right of a proprietor to vacate a part of a plat under the provisions of the act of 1847 was not involved in those cases, or either of them.

Our conclusion is, that the act of 1847 did not empower the said Bell to vacate a portion of said plat, and that the instrument purporting to effect such vacation was ineffectual to accomplish that purpose. Loomis street, as shown on the plat executed, acknowledged and recorded by said Bell, is therefore one of the public streets of the city of Chicago.

The judgment of the county court is therefore affirmed.

*Judgment affirmed.*

RICKS, C. J., and WILKIN and CARTWRIGHT, JJ., dissenting:

In the case of *Littler* v. *City of Lincoln*, 106 Ill. 353, it was decided that any part of a statutory plat might be

vacated by the owner before the sale of any lot in the part vacated and without the concurrence or joint action of the municipal authorities, subject only to the restrictions mentioned in the statute then in force. That decision was followed and affirmed in the case of *Chicago Pressed Brick Co.* v. *City of Chicago*, 138 Ill. 628, and is the established law. As we understand it, the opinion of the court in this case does not question the correctness of those decisions, but takes a contrary position on the ground that the phraseology of the act of 1874 is not the same as that of the act of 1847. No difference whatever is pointed out, and clearly there is none which would justify a different interpretation of the two acts. It is true that precisely the same words are not used in each; but the only difference is that under the act of 1874 the right of the proprietor is more limited than in the previous act. Each provides for the vacation of a part of the plat, and the only difference is that the act of 1874 restricts, to some extent, the right of the owner to make the vacation, by two provisos. Instead of enlarging the right of the owner to vacate a part of the plat before the sale of any lot in such part, the act of 1874 purports to limit such right by provisions that the vacation shall not abridge or destroy any of the rights or privileges of other proprietors in the plat, and that the act shall not authorize the closing or obstructing of any highway laid out according to law. The only difference, therefore, between the two acts is against the conclusion reached in this case. It seems to us that the plain meaning of the act of 1847 is, that the owner of the premises may vacate the whole plat at any time before making sale of any lot therein, and may vacate any part of the plat before making any sale of a lot in the part vacated, and that such interpretation is the only one permissible under the above decisions.

The first of the provisos to the act of 1874 merely expresses what was the law before its enactment,—that the rights of other proprietors in the plat cannot be destroyed or abridged by a vacation,—and therefore, so far as this case is concerned, there is no legal difference between the two acts. The rights of other proprietors so secured, whether by the law or by the act of 1874, are personal and individual rights and privileges, which such proprietors may waive or enforce at their own pleasure. There is no right in the vacated streets vested in the municipality, but the vacation operates "to divest all public rights in the streets, alleys, commons and public grounds" in the vacated portion. We think the holding that the municipality represents any proprietor in another portion of the plat and may enforce his individual right is clearly wrong. The individual may be barred by statute of limitations, by *laches* or acquiescence, none of which affect the municipality; and certainly the municipality could not enforce a right which had been so barred or lost. He may waive his right or prefer not to enforce it. In this case the vacation was thirty-three years ago, and, so far as appears, was never questioned by any proprietor in any other portion of the plat. If the vacation could not become effectual without the consent of some other proprietor, there is no evidence in the record that such consent was wanting; and if it was not obtained, the private right was apparently lost long ago. We see no ground for holding that the city of Chicago can now interpose to assert a supposed right of some individual not even claimed by him. The city certainly does not assume any trust with respect to a purely individual and personal right. It does not appear in this case that there is any private right which could be enforced even by an individual. The public right was extinguished by the deed of vacation of 1871, in the manner

provided by law, and no individual is claiming any private right in the alleged street. The only question in this case is whether, as between the owner of the premises and the city of Chicago, the deed of vacation was a valid exercise of the power conferred by the statute to vacate part of a plat. That question, we think, must be answered in the affirmative. Decisions relating to the rights of municipalities in streets, or the right to open the same in cases of common law dedications or offers to dedicate which have not been withdrawn or cannot be legally withdrawn, we do not regard as at all relevant to the question in this case, where the plat was made and the part of it vacated in the precise mode authorized by the statute.