Oscar F. Mayer, Appellee, v. William M. Collins, Impleaded with Dario L. Toffenetti, Appellant.

Gen. No. 35,411.

220

Opinion filed October 26, 1931. Rehearing denied November 6, 1931.

ROSENTHAL, HAMILL & WORMSER, for appellant; LESSING ROSENTHAL, F. HOWARD ELDRIDGE and GEORGE W. GALE, of counsel.

MAYER, MEYER, AUSTRIAN & PLATT and SCHEIN & BECKWITH, for appellee; CARL MEYER and M. PAUL NOYES, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Complainant, who is the lessee of defendant Collins under a 99-year lease expiring in 1991, filed his bill seeking to have the defendant enjoined from terminating or forfeiting the lease. Upon application the chancellor granted an interlocutory injunction to this effect upon the complainant filing a bond in the penal sum of $75,000, which bond was duly filed. From this order defendant appeals.

The premises involved are numbered 57–59 West Randolph street, Chicago, and prior to June 1, 1931, were improved with a four-story building erected shortly after the Chicago fire in 1871. Defendant's brief goes largely to the merits of the controversy and an agreement by us with his contentions would virtually decide the issues presented by the bill and answer.

At the outset, it cannot be too strongly stated that in an appeal from an interlocutory order this court does not necessarily determine the rights of the parties upon the merits of the cause, but only determines whether the interlocutory order was probably necessary to preserve the equitable rights of the parties. While occasionally this may involve a consideration of whether the bill is obnoxious to a general demurrer, yet the essential test should be the probabilities of the complainant having a case and a consideration of the situation presented, balancing the practical advantages against the disadvantages of maintaining the *status quo* until final disposition. Among many cases so holding are *Love v. Love,* 145 Ill. App. 150; *McDougall Co. v. Woods,* 247 Ill. App. 170; *People v. Standidge,* 333 Ill. 361. In this latter case the court said that: "An interlocutory injunction is merely provisional in its nature. . . . Its object is to preserve the subject in controversy, but it is not decisive of the cause upon the merits." See also *Fishwick v. Lewis,* 258 Ill. App. 402; *Kuhl v. Clark,* 261 Ill. App. 491. In *Rago v. Village of Melrose Park,* 161 Ill. App. 18, it was said that injunctions *pendente lite* will be granted "If it appears that less harm from this course will result to the enjoined party if he should be finally victorious than would accrue to the complainant from the absence of the injunction if he were the winning party."

In *Young v. Federal Union Surety Co.,* 183 Ill. App. 278, the opinion quoted from *City of Newton v. Levis,*

79 Fed. 715: "When the questions to be ultimately decided are serious and doubtful, the legal discretion of the judge in granting the writ should be influenced largely by the consideration that the injury to the moving party will be certain, great and irreparable if the motion is denied, while the inconvenience and loss to the opposing party will be inconsiderable and may well be indemnified by proper bond if the injunction is granted."

Defendant's principal assertion is that whatever rights the complainant may have can be as well asserted and protected in a court of law as in a court of equity. To determine this it is necessary to refer somewhat briefly to the allegations of the bill.

Complainant became the owner of the leasehold estate in 1910 and at the same time purchased the building. In 1921 the defendant Collins took from complainant a ten-year sublease of the land and building and, in turn, made a sublease of the premises to a Chinese restaurant which occupied the property until about April 28, 1931. It is alleged that when this latter subtenant moved out, the building was left in a very bad and unsafe condition. The bill states in great detail and at length the particulars of the condition of the premises and asserts that it was the duty and obligation of defendant Collins, then the lessee of the complainant, to keep said building in good repair and in a safe, clean and wholesome condition and in conformity with all the regulations and requirements of the City of Chicago, but that defendant failed in this respect. Among other items, in which it was alleged that the building was unsafe, are that the basement walls were unsound and incapable of sustaining the loads per floor as required by the ordinances of the City of Chicago; that the wooden joists were overstressed; electric system obsolete; heating plant unsafe; steam piping exposed; and in very many other

respects the alleged unsafe and deplorable condition of the premises is set forth.

In 1925, defendant Collins became the owner of the fee and the lessor of complainant.

Shortly prior to the expiration of the ten-year sublease to defendant, complainant negotiated a new sublease expiring in 1991 with Dario L. Toffenetti. By its terms Toffenetti was obligated to expend not less than $60,000 in improving, repairing and remodeling the building in order to put it in good condition and repair, for the purposes of a restaurant business to be conducted in the building, which was to be completed by November 1, 1931, fully paid for and free from liens, all in accordance with plans and specifications submitted to complainant.

Complainant was advised by competent architects and engineers that the only portion of the building having any value were the side walls; that reconstruction of the building piecemeal was not practical, and that unless complainant was permitted to erect a new building except for the side walls, he would not be able to comply with the terms of the lease to maintain upon the premises a building worth not less than $35,000.

Complainant wrote to the defendant to the effect that the proposed improvements would give as security for the rents a building in first class condition and repair and worth at least $60,000, instead of the $35,000 building called for by the lease, and offering to provide defendant with ample security as a guaranty for the payment of ground rent, taxes, etc., during the period of building operations and for the performance of all the covenants of the lease including the completion of the improvements fully paid for and free from liens. Defendant asked for an opportunity to examine the plans and specifications, which was granted, and thereafter wrote complainant rejecting his offer and stating he would not give his consent to

the changes proposed. Thereafter the alterations were commenced on June 1, 1931, and, it is asserted, have been in progress ever since. June 17, defendant served notice on complainant, reciting that the building was then wholly destroyed and demolished, which was a violation of one of the material and important terms of the lease, and in consequence defendant had elected to determine the lease and complainant was notified to quit the premises and deliver possession within ten days. Following receipt of this notice the instant bill was filed and a motion made for a preliminary injunction, which after one or two continuances was granted upon the filing of a bond for $75,000, which was approved and filed.

A reading of the bill apparently shows equitable considerations which would not be available to complainant in an action at law. Among these are the alleged breach by defendant of his covenant while he was a sublessee in respect to keeping the building safe and in good repair; the unsafe condition of the building resulting from the occupancy by defendant's subtenant, the Chinese restaurant; the advice of the architects and engineers of the necessity for a complete reconstruction of the building and the impracticability of piecemeal reconstruction; the execution of a sublease by complainant to Toffenetti obligating him to reconstruct the building by November 1, 1931, costing not less than $60,000, and the offer of ample security guaranteeing to defendant the payment of all rent and taxes and the completion of the building free from liens.

It is a well recognized principle that it does not follow that, because a remedy at law is afforded in a case, equity will not also take jurisdiction of the same state of facts. If the remedy in equity is more adequate because of special circumstances in the situation, the jurisdiction of equity will be sustained. *Warfield-Pratt-*

*Howell Co. v. Williamson,* 233 Ill. 487. In *Chapman v. American Surety Co.,* 261 Ill. 594, it was said: "No branch of equity jurisdiction is more frequently invoked. The use of injunctions to stay actions at law was substantially coeval with the establishment of chancery jurisdiction. That jurisdiction was largely built up through the instrumentality of injunctions in restraining the prosecution of legal actions where the aid of chancery was sought because the equities of the case could not be considered in the common law action." And, further, that equity jurisdiction is for the purpose of prohibiting litigants from resorting to legal jurisdiction, "because the controversies involve equitable features which can only be fully and finally determined in a tribunal having equitable jurisdiction." There are many other similar cases.

We cannot agree with the proposition advanced by defendant that a court of equity will not grant relief from the forfeiture of a lease for a cause other than the nonpayment of money in the absence of fraud, etc. In *Illinois Merchants Trust Co. v. Harvey,* 335 Ill. 284, it was argued that because of certain sections of the Landlord and Tenant Act, Cahill's St. ch. 80, equity could not enjoin a threatened forfeiture. The Supreme Court did not agree with this, saying: "The source of the right in the landlord to declare a forfeiture is not important. . . . We are unable to see any difference between a right given by statute and one arising from any other source. The basis of the relief is that the defendant is seeking to exercise a right which he has but which he should not be permitted to exercise."

Many other points are presented which go to the merits, which upon the present appeal it is not necessary for us to determine. We can only repeat that upon this appeal we are called upon to determine only whether the party probably is entitled to the relief

sought and whether the preliminary injunction was granted as necessary to preserve the rights of the parties *in statu quo* until a hearing can be had upon the merits of the cause. Upon the showing made we cannot say that the granting of the temporary injunction was an abuse of the discretion lodged in the chancellor, and it is therefore affirmed.

*Affirmed.*

O'Connor, P. J., and Matchett, J., concur.