## Milton W. Paul and Anna Paul, Appellees, v. City of Rockford, Appellant.

### Gen. No. 8,970.

Opinion filed January 17, 1936.

CHARLES S. THOMAS, Corporation Counsel, and ALF O. AHLSTRAND, City Attorney, for appellant.

SMITH & MENZIMER, of Rockford, for appellees; LISLE W. MENZIMER, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

On November 26, 1927, the county court of Winnebago county entered an order confirming a special assessment against a parcel of land described as the west 150 feet of the tract for the construction of a public

sewer in Rockton avenue. The proceeding was prosecuted by the city of Rockford under the Local Improvement Act. The assessment is payable in 10 annual instalments some of which are past due and unpaid and some of which have not yet matured. When the assessment was made, the tract was not platted into lots. The tract is irregular in shape and extends eastward from Rockton avenue for some distance, but it is to be noted that only the west 150 feet of the tract was assessed for the sewer. On June 26, 1929, the said county court signed an order confirming a supplemental assessment against the parcel of land.

After the first assessment was made the tract of land, including the parcel assessed, was platted by H. D. Thomas, the owner, into 13 lots. The plat which shows that the tract had been divided into lots was recorded in the office of the recorder of deeds of Winnebago county on May 18, 1928. This plat is designated thereon as "H. D. Thomas Subdivision." We assume that the recorder of deeds did not record the plat unless it was approved by the authority of the city of Rockford or by some city officer designated for that purpose by resolution or ordinance of the legislative authority of the city. Ill. State Bar Stats. 1935, ch. 115, ¶ 14. (Sec. 13, ch. 115, Smith-Hurd Rev. St.; sec. 134, ch. 24, ib.) Also that the plat complied with chapter 109 of the Revised Statutes and the ordinances of the city of Rockford. (*People v. Massieon,* 279 Ill. 312, 316.)

Examining the plat, which was introduced in evidence, and confining our attention to the parcel of land assessed, we see that lots numbered 1, 2, 3, 4, and 5 are contiguous on their west sides to Rockton avenue which runs north and south. Lot 1 is the north lot and the other lots lie south thereof in position in numerical order as stated, and these five lots form the western tier of lots of the subdivision. Lot 1 abuts 50.12 feet on Rockton avenue; lot 2 abuts 50 feet on

Rockton avenue. South of lot 2 is designated Knight avenue 43 feet and running east and west through the subdivision. Lot 3, which adjoins Knight avenue on the south, abuts on Rockton avenue 50 feet. Lot 4 abuts on Rockton avenue 50 feet. Lot 6 abuts on Rockton avenue 63.67 feet. We have stated the widths of these lots, and the total of their widths in feet, added to the width of Knight avenue, is the entire distance which the parcel of land assessed abuts on Rockton avenue, namely 305.79 feet.

The parcel of land assessed is described in the assessment roll as follows: "The West 150 ft. of the following described tract: Part of the S. ½ of the NW¼ of Sec. 14-44-1, bounded as follows, to wit— Beginning at a point on the W. L. of said Sec., 153 feet N. of the intersection of said W. L. with the Northerly L. of the right of way of the C. M. & St. P. Ry. Co., thence northerly along said Westerly L. of said Sec. to a point 664.95 feet S. of the N. W. corner of the S. ½ of the N. ½ of the NW ¼ of said Sec. 14, thence E. at right angles with said W. L. of said Sec. 14, 435.009 ft. to the Westerly line of said railway right of way, thence Southwesterly along said railway right of way to the intersection of a line drawn from place of beginning at right angles with the Westerly line of said Sec., thence Westerly along said last mentioned line, 144.2 ft. to the place of beginning." The west line of said section 14 is 33 feet west of, and runs parallel with, the west lines of lots 1, 2, 3, 4 and 5 and this 33-foot strip of land which lies between these lots and the west line of section 14 is a part of Rockton avenue. The recording of the plat of the tract of land described in the assessment roll was a dedication, and the construction of the sewer an acceptance thereof, of a strip of land 33 feet wide and 305.79 feet long as a part of Rockton avenue. *(People v. Massieon, supra.)* Lots 1 and 2 extend eastward from the eastern boundary line of Rockton avenue for a distance of

124 feet; lots 3, 4, and 5 each extend so eastward a distance of 110 feet.

These five lots, together with the width of Knight avenue and the strip of land dedicated a part of Rockton avenue by the plat, comprise approximately the parcel of land assessed, namely, the west 150 feet of the said tract of land.

It is not contended that the tract of land was platted to evade the special assessment against the parcel of land in question and we have no reason to believe that the laying out of the lots in the tract was made in bad faith.

Lots as platted in the subdivision have been sold, and the dedication of Knight avenue as a way for travel, or for street purposes, is irrevocable by the former owner of the land. *(Saunders v. City of Chicago,* 212 Ill. 206; *People v. Ricketts,* 248 Ill. 428; *Stevenson v. Lewis,* 244 Ill. 147; *Swedish Evangelist Lutheran Church v. Jackson,* 229 Ill. 506.) Lots 6 to 13 of the subdivision front on Knight avenue as the same is marked on the plat. These last named lots are not included in the parcel assessed for the sewer. The owners of these lots have the right to the use of Knight avenue as a street (although it is not accepted by the city of Rockford as a public street), unless deprived of that right by the process mentioned in the next paragraph.

There is no assessment for the construction of the sewer against lots 1, 2, 3, 4 and 5 of the H. D. Thomas subdivision, nor any of them, and no judgment for unpaid instalments of the assessment can be taken against the lots, or any of them, as such. A judgment for delinquent instalments would have to be taken against the parcel of land which is the west 150 feet of the tract of land described in the assessment roll. (*Murphy v. People,* 120 Ill. 234.) A tax sale of this parcel of land would result in selling the east 33 feet of a part of Rockton avenue. If the city has accepted

the irrevocable offer of Thomas to dedicate to public use as a public street, that part of Knight avenue shown on the plat of the subdivision, then the west 150 feet of Knight avenue which lies immediately east of Rockton avenue would be disposed of if sold at tax sale. If Knight avenue, as shown on the plat, has not been accepted as a public street by the city and a sale of the parcel assessed would be for delinquent assessment instalments, then such 150 feet of Knight avenue would come under the control of the tax sale purchaser who would have the right to close said 150 feet of the highway designated on the plat as Knight avenue. Upon the happening of the above contingency (the tax sale of the property assessed), the owners of lots in the subdivision would sustain serious injury to their properties.

After the plat was recorded, Thomas, not having complied with Ill. State Bar Stats. 1935, ch. 120, ¶ 371 (section 371, chapter 120, Smith-Hurd Rev. Stats. [1935]), sold lots 1, 2, 3, 4, 5 and 6 to different persons who are now the respective owners of the lots. Due to the unpaid assessment on the parcel of land assessed, the situation has become burdensome and oppressive on the owners of these lots.

The injury which would result to the owners of lots in the subdivision in case Knight avenue were closed, is of such a serious nature that fair-minded men must agree that the assessment against the parcel of land should be apportioned to lots 1 to 6 inclusive so far as these lots are benefited by the construction of the sewer in Rockton avenue, if it can legally and equitably be done. The assessment is apportionable equitably among the six lots so far as the rights of the owners of these lots are concerned.

The parcel of land assessed, touching 305.79 feet on Rockton avenue and having a depth of 150 feet, was assessed about $1,000 for the construction of the sewer, no doubt on the theory that the parcel could be platted

into lots fronting on Rockton avenue. If the parcel is sold for unpaid assessment instalments, it will, no doubt, be used and sold as lots as platted with the improvements on the lots. The situation has become ironical and intolerable.

We are of the opinion, under the particular facts in the case, that any owner of a lot in the subdivision should be afforded a remedy by the courts to correct the situation which confronts him if it is legally possible to do so. Having arrived at this conclusion, this appeal will be further considered.

The several instalments of the assessment maturing prior to January 1, 1932, were paid as they matured. On December 14, 1934, Milton W. Paul and Anna Paul, the owners of lot 5 of the H. D. Thomas subdivision, filed their petition in the circuit court of Winnebago county to apportion the special assessment. The 4th, 5th and 6th instalments were then due and owing and they totaled, with interest $424.21. The 7th, 8th, 9th and 10th instalments, the petition alleges, become due on the first day of January 1935, 1936, 1937 and 1938, respectively, each such instalment being in the amount of $99.78. After the petition was filed it was amended by alleging that the west seven feet of lot 6 was benefited by the construction of the sewer; also, that that assessment should be apportioned to each of lots 1 to 6 in proportion to the benefits received by each lot from the construction of the sewer, and no more.

The petitioners allege they are ready and willing to pay that part of the instalments which are now due and owing, including that of January 1, 1935, which the court should find is properly due and owing from them as owners of lot 5; that unless the court apportions the assessment, proceedings can be taken against said lot 5 for the sale thereof on account of nonpayment of past due instalments of the assessment; that the petitioners do not have money or property sufficient to pay, or means of obtaining sufficient money

to pay all of said unpaid instalments; that unless an apportionment is made by the court, petitioners will be forced to permit lot 5 to be sold for tax delinquencies and will, in the event thereof, be forced to lose said lot 5 which is improved with a dwelling and now occupied by them as a homestead.

The petition prays that the assessment may be apportioned among the six lots according to the benefits accruing to each lot from the construction of the sewer, and that the proper authorities may be directed to spread upon their records the apportionment as ordered by the court.

The owners of lots 1, 2, 3, 4, 5 and 6 entered their appearances and expressly consented to the entry of an order apportioning the assessment as prayed for in the petition. The city of Rockford was made a party defendant and filed its answer denying that the assessment should be apportioned.

The parties have filed a written stipulation to the effect that the true facts are set forth in the petition and amendment thereto, and that if testimony were taken, those facts would be duly proven.

A hearing was had before the chancellor and the petitioners introduced as a witness, Raymond Orput, the city engineer of the city of Rockford, who testified that he had an opinion as to what would be the fair and equitable portion of the assessment to be borne by lots 1, 2, 3, 4, 5 and the west seven feet of lot 6. He stated that each of such lots should bear the same proportion of the assessment as the area of each lot bears to the total area of the parcel assessed. That lot 1 should bear 19.6 per cent of the total assessment; lot 2, 19.4 per cent; lot 3, 17.8 per cent; lot 4, 17.8 per cent; lot 5, 22.4 per cent; lot 6, 3 per cent. These percentages were the same as stated in the petition. Orput was not cross-examined and no other evidence was introduced.

The court rendered a decree finding that the assessment was levied against the parcel of land in question according to the benefit it would derive from the improvement; that said lots 1, 2, 3, 4, 5 and west seven feet of lot 6 are benefited by said improvement in direct proportion that the area of each lot, or part thereof, bears to the total area of the parcel assessed. The court ordered that instalments 4 to 10 inclusive be apportioned according to the percentages as testified to by the city engineer and that upon payment to the proper authority of that portion of any instalment, 4 to 6, inclusive, which became due January 1, 1932, 1933, 1934, apportioned to any one of said lots, said lot shall be discharged of any lien arising out of or by reason of default in the payment of that particular instalment; that upon payment of that portion of any instalment, 7 to 10, inclusive, payable January 1, 1935, 1936, 1937, and 1938 as apportioned by the decree, such lot shall be discharged from the assessment. The decree further orders: ''That the defendant, City of Rockford, shall, upon the entry of this decree, authorize and direct any and all officers of the City of Rockford and officers of the County of Winnebago and State of Illinois having to do with the assessment of said premises and having to do with the collection of said assessments for the City of Rockford to make such change or changes upon their record or records as necessary to give effect to the terms of this decree.'' The city of Rockford has appealed from the decree.

It is not contended that the apportionment is not just and equitable among the six lots or that the lots would sell at tax sale for less than the parcel of land assessed. The decree finds that each of the six lots is benefited by the construction of the sewer to the amount designated. The city does not contend otherwise.

It is the contention of counsel for the city that Ill. State Bar Stats. 1935, ch. 120, ¶ 371 (section 371, chapter 120, Smith-Hurd Rev. St. [1935]) provides an exclusive statutory method of apportioning the assessment to the lots as platted when the parcel assessed, was at the time the assessment was made, a part of the unplatted, or undivided tract of land described in the assessment roll; that the petitioners must follow the statutory procedure and a court of equity is without jurisdiction, in the first instance, to apportion the assessment to the lots as platted. The city also calls attention to the proviso of the above section.

It is provided by section 371, *supra,* as follows: That in all cases where any special assessment, payable in instalments, has been, or hereafter shall be made by any corporate authority, for supplying water, or other corporate purpose, and the owner or owners of any block or parcel of land so assessed, or some of them shall desire to subdivide the same, and to apportion such assessment and the several instalments thereof in such manner that each parcel of such subdivision shall bear its just and equitable proportion thereof, the same may be done in the following manner, to wit: The owner or owners of such lot, block or parcel of land shall present to such corporate authority a petition, setting forth: 1. The descriptive character of assessment and the date of the confirmation of the same. 2. The names of the owners. 3. A description of the land proposed to be subdivided, together with the amount of each instalment thereon, the year or years for which the same are due. 4. A plat showing the proposed subdivision. 5. The proposed apportionment of the amount of each instalment on each lot or parcel according to such proposed subdivision.

The section further provides that the petition shall be acknowledged and if the corporate authority is

satisfied it shall be approved, and the assessment as apportioned shall stand in place of the original assessment.

The proviso is as follows: "Provided, this act shall not apply to any lot, block or parcel of land on which there shall remain due and unpaid any installment."

The application of the rule that equity jurisdiction cannot be invoked where there is an adequate remedy at law depends upon the circumstances of each case. The purpose of the statute, as appears from the proviso, is to protect purchasers of lots after a parcel of land assessed has been platted into lots; to secure uniformity and simplicity in taxation; and to encourage sale of real estate. The statute is remedial and relates to the collection of taxes and not to the reduction or abatement of taxes. It should be fairly and reasonably construed. Where the rights of third persons have intervened or become involved, the statute does not provide a remedy which is coextensive with that afforded by a court of equity. The petitioners do not propose to subdivide a block, lot or parcel of land; they do not have the right to compel Thomas to file a petition with the corporate authority of the city of Rockford in compliance with the statute, and without such a petition the city has no power to act in the premises. We are of the opinion that the statutory remedy, administrative in character, is not exclusive in the sense that it ousts the jurisdiction of a court of equity when the rights of third persons have intervened.

The decree of the circuit court of Winnebago county is affirmed.

*Affirmed.*