SECOND DIVISION
May 6, 2008

No. 1-06-3589

| | | |
|---|---|---|
| THE BOARD OF EDUCATION OF PARK FOREST-CHICAGO HEIGHTS SCHOOL DISTRICT NO. 163, COOK COUNTY, ILLINOIS, a Body Politic; and VIRGINIA FORD, a Current Individual Taxpayer and Cook County, Illinois Resident, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| JAMES M. HOULIHAN, COOK COUNTY ASSESSOR, and THE COOK COUNTY BOARD OF REVIEW, and THORNCREEK APARTMENTS II AND III, L.L.C., Michigan Limited Liability Companies, et al., | ) ) ) ) ) ) | Honorable Martin S. Agran, Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court of Cook County granting defendants' combined motions to dismiss with prejudice, pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2006)), plaintiffs' verified complaint for declaratory relief and relief by issuance of writs of prohibition and/or *mandamus*.

Plaintiffs, the Board of Education of Park Forest-Chicago Heights School District No. 163, and Virginia Ford, who is an elected member of the Board of Education of School District No. 163 and a taxpaying resident therein since 1995, filed a declaratory action to overturn what they alleged were fraudulently induced assessments made by defendant Cook County Assessor

1-06-3589

James M. Houlihan from 1996 through 2005 on properties owned by defendants Thorncreek Apartments II and III, L.L.C. (hereinafter referred to as the Thorncreek defendants) in Park Forest, Cook County, Illinois. According to the complaint, 412 units of town homes were purchased by the single developer, Thorncreek defendants, in 1995 and purportedly sold to 12 investors in various forms. The names of these individual contract buyers do not appear in the chains of title because under the articles of the warranty deeds and option agreements they are prohibited from claiming any ownership interests, either legal or equitable, in the premises.

Between 1986 and 1995, the assessor consistently classified the Thorncreek properties as Class 3-99 rental condominiums. Class 3-99 is a subcategory of Class 3 and is for rental condominium units in a single development of one or more contiguous parcels with seven or more rental units, which are assessed at 33% of the property's fair market value. In 1996, 1997, 1998 1999, 2002, and 2003 the purported owners of the properties, all of whom were represented by the same legal counsel, appealed these Class 3 assessments by petitioning the Board of Review (the Board) to grant their properties a Class 2-99 classification, which is a subcategory of Class 2 and is for residential condominiums, which are individually owned units or condominiums with less than seven rental units and are assessed at 16% of the property's fair market value. These petitions alleged that the purported owners owned certain property in Park Forest, Illinois, and the units were the only units they owned consisting of six residential condominium units. Attached to each petition was a copy of the real estate contract and the closing statement indicating that each purported owner purchased only six units on the property. Paragraph five of each petition stated:

"That as the Petitioner owns 6 or less residential condominium units, the present assessed valuation which reflects 33% of the property's market value and [price] per unit, is excessive an [*sic*] contrary to the applicable Cook County Assessment Ordinance."

The Board granted these petitions each time and lowered the classification of the properties from Class 3-99 to Class 2-99 for the years 1996-2000, 2002, and 2003. No appeals were taken in 2001, 2004, and 2005 because the assessor classified the Thorncreek properties as Class 2-99 residential condominiums. In 2004, the assessor's office permanently classified the properties as Class 2-99 residential condominiums.

According to the complaint, the Thorncreek defendants engaged in, and were continuing to engage in, a fraudulent scheme to avoid having the properties classified as Class 3 rental condominium property, and the alleged sales of these properties to the purported purchasers in groups of six units or less were shams designed to ensure that the properties would be classified or reclassified as Class 2 residential condominium properties to be assessed at the lower rate. Count I requested a judgment declaring that the properties were incorrectly classified as Class 2-99 residential condominiums for the tax years 1996 through 2005, inclusive, and that the proper classification was Class 3-99 for residential condominiums for the tax years 1996 through 2005. Count II requested the court to issue writs of prohibition and/or *mandamus* directing the Board of Review to either reverse its decisions and reclassify the properties for tax purposes as Class 3-99 for 1996, 1997, 1998, 1999, 2000, 2002, and 2003, or conduct a hearing to reconsider whether it should reclassify the properties as Class 3-99 for the tax years 1996, 1997, 1998, 1999, 2000,

1-06-3589

2002, and 2003. Count II requested writs of prohibition and/or *mandamus* directing the assessor to either reverse its prior decisions to classify the properties for tax purposes as Class 2-99 for tax years 2001, 2004, and 2005 and future tax years or reconsider, in light of the new evidence, whether to classify the properties for tax purposes as Class 2-99 for tax years 2001, 2004, and 2005.

All defendants filed a section 2-619.1 motion to dismiss on the grounds that plaintiffs had failed to pursue their available remedies under the Property Tax Code (Code) (35 ILCS 200/1-1 *et seq*. (West 2006)), and failed to make a demand of the assessor or the Board for the relief sought with respect to the *mandamus* count. While plaintiffs conceded they did not participate in the statutory appeals process under the Code, they maintained in their response to the motions to dismiss that they were prevented from learning who the true owners of the properties were in a time sufficient for them to exercise the appeals process due to the fraudulent conduct of the Thorncreek defendants, and that, therefore, they did not have an adequate remedy at law.

After hearing arguments from all the parties, the trial court granted the motions to dismiss on the grounds that plaintiffs were precluded from obtaining declaratory relief because they failed to exhaust their available remedies under the Code and the Thorncreek defendants' alleged fraud did not provide an exception to that rule.

On appeal, plaintiffs have requested this court to consider whether the trial court's granting of the motions to dismiss the complaint was erroneous due to the allegedly deceitful real estate transactions of the Thorncreek defendants which rendered any remedies set forth under the Code inadequate.

1-06-3589

Section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2006)) permits a party to combine a section 2-615 motion to dismiss based upon a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss based upon certain defects or defenses. It is proper for a court when ruling on a motion to dismiss under either section 2-615 or section 2-619 to accept all well-pleaded facts in the complaint and reasonable inferences from those facts as true. Buckner v. O'Brien, 287 Ill. App. 3d 173, 176 (1997); Edelman, Combs & Latturner v. Hinshaw & Culbertson, 338 Ill. App. 3d 156, 164 (2003). Our review is *de novo* for motions brought under either section. Edelman, Combs & Latturner, 338 Ill. App. 3d at 164.

A motion to dismiss under section 2-619 should be granted when it raises one or more affirmative matters which negate the plaintiff's cause of action or which refute crucial conclusions of law or material facts that are unsupported by allegations of specific facts contained or inferred in the complaint. Brackett v. Galesburg Clinic Ass'n, 293 Ill. App. 3d 867, 870 (1997). A motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) is properly granted where the plaintiff fails to state a cause of action upon which relief can be granted. Neade v. Portes, 193 Ill. 2d 433, 439 (2000).

The Property Tax Code provides a mechanism for interested parties who have standing to file a complaint with the Board of Review and states, in pertinent part:

"In counties with 3,000,000 or more inhabitants, complaints that any property is overassessed or underassessed or is exempt may be made by any taxpayer. Complaints that any

- 5 -

property is overassessed or underassessed or is exempt may be made by a taxing district that has an interest in the assessment to a board of review. All complaints shall be in writing, identify and describe the particular property, otherwise comply with the rules in force, be signed by the complaining party or his or her attorney, and be filed with the board of appeals (until the first Monday in December 1998 and the board of review beginning the first Monday in December 1998 and thereafter) in at least duplicate. The board shall forward one copy of each complaint to the county assessor." 35 ILCS 200/16-115 (West 2006).

Any taxpayer or taxing body which has an interest in the decision of the Board of Review and is dissatisfied with its decision or the decision of the board of appeals as it pertains to the assessment of his or her property for taxation purposes may appeal the decision to the Property Tax Appeal Board for review. That section states in pertinent part:

"[A]ny taxpayer dissatisfied with the decision of a board of review or board of appeals as such decision pertains to the assessment of his or her property for taxation purposes, or any taxing body that has an interest in the decision of the board of review or board of appeals on an assessment made by any local assessment officer, may *** (ii) in assessment year 1999 and thereafter in counties with 3,000,000 or more inhabitants within 30 days after the date of

the board of review notice or within 30 days after the date that the

board of review transmits to the county assessor pursuant to

Section 16-125 its final action on the township in which the

property is located, whichever is later, appeal the decision to the

Property Tax Appeal Board for review." 35 ILCS 200/16-160

(West 2006).

Although the existence of another remedy ordinarily will not preclude bringing a

declaratory judgment action, declaratory relief is unavailable in revenue cases. It is the rule,

applying general equitable principles, that relief by way of declaratory judgment is not available

if the statute provides an adequate remedy. People ex rel. Fahner v. American Telephone &

Telegraph Co., 86 Ill. 2d 479, 485 (1981); La Salle National Bank v. County of Cook, 57 Ill. 2d

318, 322 (1974). "The application of the rule that equity jurisdiction cannot be invoked where

there is an adequate remedy at law depends upon the circumstances of each case." Paul v. City

of Rockford, 283 Ill. App. 310, 319 (1936). It is a well-recognized principle that, because a

remedy at law is afforded in a case, equity will not also take jurisdiction of the same set of facts.

If the remedy in equity is more adequate because of special circumstances in the situation, the

jurisdiction of equity will be sustained. Famous Permanent Wave Shops, Inc. v. Smith, 302 Ill.

App. 178, 186 (1939), quoting Mayer v. Collins, 263 Ill. App. 219, 224 (1931).

Here, the issue is whether the plaintiffs, under the particular circumstances of this case

involving the allegedly fraudulent conduct of the Thorncreek defendants, had an adequate

remedy at law. Specifically, they argue that because the Thorncreek defendants embarked upon

1-06-3589

this fraudulent scheme, they were prevented from learning who the true owners of the property were until long after the statutory period of objecting to the assessment had passed, and consequently, any potential administrative remedy established under section 16-115 of the Property Tax Code was rendered inadequate.

The tax objection procedure as outlined under the Property Tax Code states in pertinent part:

> "(a) A tax objection complaint under Section 23-10 shall be filed in the circuit court of the county in which the subject property is located. *** The complaint shall name the county collector as defendant and shall specify any objections that the plaintiff may have to the taxes in question. No appearance or answer by the county collector to the tax objection complaint, nor any further pleadings, need be filed. ***
>
> ***
>
> (2) The taxes, assessments, and levies that are the subject of the objection shall be presumed correct and legal, but the presumption is rebuttable. The plaintiff has the burden of proving any contested matter of fact by clear and convincing evidence.
>
> (3) Objections to assessments shall be heard de novo by the court. The court shall grant relief in the cases in which the objector meets the burden of proof under this Section and shows an

assessment to be incorrect or illegal. If any objection is made claiming incorrect valuation, the court shall consider the objection without regard to the correctness or any practice, procedure, or method of valuation followed by the assessor, board of appeals, or board of review in making or reviewing the assessment, and without regard to the intent or motivation of any assessing official. The doctrine known as constructive fraud is hereby abolished for purposes of all challenges to taxes, assessments, or levies.

(c) If the court orders a refund of any part of the taxes paid, it shall also order the payment of interest as provided in Section 23-20. Appeals may be taken from final judgments as in other civil cases." 35 ILCS 200/23-15 (West 2006).

Plaintiffs point out they are not contending that the assessments by the county were fraudulent or even constructively fraudulent but that the Thorncreek defendants' "deceitful real estate transactions" amounted to fraud, thereby rendering the remedy provided under sections 16-115 and 16-160 inadequate.

It has often been held that declaratory judgment is not a viable alternative to the statutory remedies provided by the Code and that relief should not be granted under the declaratory judgment act (735 ILCS 5/2-701 (West 2006)) in any tax case that would not require relief in equity by injunction. See Hulse v. Kirk, 28 Ill. App. 3d 839, 841 (1975). The law is well established that "equity will not assume jurisdiction unless special grounds for equitable

jurisdiction are established and unless the plaintiff does not have an adequate remedy at law subject to two exceptions; namely, where a tax is unauthorized by law or is levied upon exempt property." Lopin v. Cullerton, 26 Ill. App. 3d 748, 752 (1975); see also Clarendon Associates v. Korzen, 56 Ill. 2d 101, 105 (1973).

In several cases, however, our supreme court has held that in addition to the two exceptions noted above, equity will enjoin the collection of taxes when there has been a fraudulent assessment of property. Clarendon Associates, 56 Ill. 2d at 105-06, citing Chicago, Burlington & Quincy R.R. Co. v. Cole, 75 Ill. 591 (1874); Porter v. Rockford, Rock Island & St. Louis R.R. Co., 76 Ill. 561, 596 (1875); Pacific Hotel Co. v. Lieb, 83 Ill. 602, 612 (1876); Bates v. Parker, 227 Ill. 120, 126 (1907); Calumet & Chicago Canal & Dock Co. v. O'Connell, 265 Ill. 106 (1914); People's Gas Light & Coke Co. v. Stuckhart, 286 Ill. 164, 176 (1918); Adlrich v. Harding, 340 Ill. 354, 361 (1930); Ames v. Schlaeger, 386 Ill. 160, 162 (1944). In view of the existence of the present statutory remedy, there is no apparent reason for continuing to afford equitable relief in such cases unless the remedy at law is found to be inadequate. Clarendon Associates, 56 Ill. 2d at 107.

"The doctrine of exhaustion of remedies is a judicially created doctrine that precludes a party from seeking review in the courts without first pursuing all administrative remedies available." In re Application of the Cook County Collector for the 1981 Tax Year, 173 Ill. App. 3d 821, 824 (1988). "The principal reason for exhaustion of administrative remedies in property tax cases is to afford the tax authorities an opportunity, in the first instance, to correct fraudulent or excessive assessments." In re Application of Cook County Collector, 173 Ill. App. 3d at 824.

1-06-3589

In <u>People ex rel. Fahner v. American Telephone & Telegraph Co.</u>, 86 Ill. 2d 479, 486 (1981), the supreme court embarked upon a discussion of the exhaustion of remedies doctrine. It stated:

> "[A]n action for declaratory judgment can be maintained in revenue cases where the procedure for assessing and collecting taxes is specifically provided by statute only in situations where the party bringing the action does not have an adequate remedy at law. Therefore, in cases in which the statute does provide an adequate remedy at law, an action in such a case is not one cognizable in the first instance in the courts but is a matter properly maintained in the first instance by an administrative agency alone. Thus these tax cases fall within and are controlled by the doctrine of exhaustion of remedies ***." <u>Fahner</u>, 86 Ill. 2d at 486.

In rendering its decision in the instant case, the trial court acknowledged all of the cases which stand for the proposition that declaratory actions can be maintained in revenue cases where the party bringing the action does not have an adequate remedy at law, and noted that the courts will not review the assessment of property upon which taxes are based unless the assessments are fraudulent or constructively fraudulent. However, the trial court went on to state that in each of those cases, none of them dealt with fraud perpetrated by anyone other than the assessor or public officials and that no exception existed for situations in which a taxpayer, such as the Thorncreek defendants, has allegedly committed fraud.

1-06-3589

We note that there is no statutory authority for the Cook County assessor to go back to prior years and collect taxes for years where warrants have already been extended and the taxes have been paid, nor have plaintiffs put forth that argument. Plaintiffs, while acknowledging there is no statute or case law that empowers the courts to order the assessor to reverse the classifications going back to 1996, ask us to carve out an exception due to the unusual circumstances of this case. While this court may be sympathetic to such an appeal, we cannot act beyond the parameters of the law and make exceptions that are not based in the law. The fact remains that plaintiffs have an adequate remedy at law for future assessments, but a court of equity is not empowered to order the assessor to go back to past years, reclassify a classification, and decertify an assessment where warrants have been extended and the taxes collected.

Plaintiffs also requested that the circuit court issue a writ of *mandamus* upon the assessor. However, *mandamus* is appropriate only where there is a clear right to the requested relief, a clear duty on the part of the respondent to act, and a clear authority in the respondent to comply with the terms of the writ. Pucinski v. County of Cook, 192 Ill. 2d 540, 545 (2000). For the reasons stated above, plaintiffs cannot meet this burden because they do not have a clear right to the relief requested, nor is there a duty on the part of the assessor to act or comply with the terms of such a writ of *mandamus*.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN, P.J., and HALL, J., concur.