Sixty-Third and Halsted Realty Company, Appellee, v.
Chicago City Bank and Trust Company et al.,
Defendants.
Appeal of Martha Paschong et al., Appellants.

Gen. No. 40,290.

Opinion filed March 29, 1939.

CHAS. O. RUNDALL, of Chicago, for appellants.

Memorandum brief in behalf of interests formerly
possessed by Catherine L. Bromstedt was also filed

by FRANCIS E. HINCKLEY, BERNARD BARNARD and CHAS. O. RUNDALL, all of Chicago.

CLAUSEN, HIRSH & MILLER, of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the court.

The plaintiff, Sixty-Third and Halsted Realty Company, an Illinois corporation, as successor lessee by assignment in two 99-year leases covering contiguous parcels of land located on the northwest corner of Sixty-Third and Halsted Streets, Chicago, filed its complaint in the superior court of Cook county against the then owners of the fee and the county collector of Cook county seeking first, to enjoin the county collector from proceeding to have a tax receiver appointed for the premises, and second, for authority to accumulate rents and apply them to delinquent taxes which were liens on the property when the term of the leases began. Martha Paschong, Arthur W. Bromstedt, Ethel R. Martin, William F. Bromstedt and Earl W. Bromstedt, defendants, successors to undivided interests in the fee under one lease were later made defendants and filed a counterclaim seeking a termination of one of the leases for failure to pay the stipulated rent.

A decree was entered upon the findings of the court granting the prayer of an amended complaint and dismissing an amended and supplemental counterclaim. The counterclaimants appeal. An appeal was also taken by the conservator of the estate of Catherine L. Bromstedt, lessor of one tract and the owner of an undivided one-third interest in the other tract.

The case was tried on an amended complaint of plaintiff and answers thereto and on an amended and supplemental counterclaim of appealing defendants and answers thereto. The relief asked in the amended

complaint was substantially as prayed in the original and the relief prayed in the amended and supplemental counterclaim was the same as in the original.

The sufficiency of the original and of the amended complaint was tested on motions to dismiss, the first of which was sustained and the second overruled by the trial court.

The defendants suggest that no question is raised as to the pleadings save the contention that the amended complaint fails to state a cause of action in equity. Defendants' theory is (1) that there was no jeopardy because the tax receivership proceeding was void, *ab initio;* (2) that the leases contained specific provisions limiting the lessee's rights in the event of dispossession to exoneration from rental liability during any period of ouster and limiting the lessor's liability to the deprivations of rents during such period; (3) that the leases are not ambiguous or otherwise available to judicial construction; and (4) that the lessee could not refuse to pay rent and retain possession of the premises.

Catherine L. Bromstedt died on May 31, 1938, after the decree was entered in the trial court. Thereafter her son William F. Bromstedt was appointed administrator of her estate by the probate court of Cook county. Her death has been suggested of record in the proceeding and the appropriate substitution of appellants made.

The facts as they appear in the record are undisputed according to the plaintiff, and are that William Bromstedt was the owner of property on the northwest corner of 63rd and Halsted streets, Chicago, having a frontage on Halsted street of approximately 94 feet. His wife, Catherine L. Bromstedt, was the owner of the contiguous property on the north with a frontage on Halsted street of about 22 feet. One building covered both tracts. Catherine Bromstedt

was adjudicated incompetent and her husband was appointed conservator of her estate by the probate court of Cook county.

In 1909 William Bromstedt leased his tract to one Schoenfeld for a period of 15 years, expiring on April 30, 1924, with an option for an extension of 10 years to April 30, 1934. This option was exercised and the lease extended. The lease to Schoenfeld required the lessee to pay all taxes assessed against the property.

On March 9, 1922, William Bromstedt leased his tract to Lenz, Dehning and Meyn for a period of 99 years, to begin 12 years later, that is on May 1, 1934, and to end on April 30, 2033. This lease was made subject to the Schoenfeld lease and required the lessees to pay all taxes levied for the year 1934, up to and including those for 2032. On the same day, and pursuant to authority obtained from the probate court of Cook county, William Bromstedt as conservator of the estate of his wife, Catherine, made a corresponding lease of her contiguous tract for the same term and to the same lessees. On May 19, 1928, William Bromstedt conveyed his tract to Chicago City Bank and Trust Company as trustee and concurrently made a trust agreement known as Trust 303 for the benefit of himself for life, and after his death, for the benefit of the named beneficiaries. William Bromstedt died on March 19, 1929, leaving him surviving Catherine L. Bromstedt, his insane widow, and defendants Martha Paschong, Arthur W. Bromstedt, Ethel R. Martin, William F. Bromstedt and Earl W. Bromstedt, his children, as his only heirs at law and next of kin. After his death, the Chicago City Bank and Trust Company was appointed successor conservator of the estate of the insane widow.

Schoenfeld defaulted in the payment of some of the taxes for 1928 and following years. The Chicago City Bank and Trust Company, owning the corner tract as

trustee under Trust 303 and owning the adjoining 22 feet as conservator of the estate of Catherine L. Bromstedt, induced Schoenfeld to relinquish possession of the properties covered by his leases. The bank made an arrangement with the county treasurer to pay $5,000 in cash and $1,000 per month on account of the delinquent taxes. The $5,000 payment and one or more of the monthly payments were made. Substantial delinquencies existed on May 1, 1934.

Shortly before the terms of the leases began, the plaintiff corporation succeeded by assignment to the interests of Lenz, Dehning and Meyn, the original lessee. At a recurring annual profit, the plaintiff made a sublease of both tracts to Goldblatt Bros., Inc., for a period of five years from May 1, 1934, with an option for another 94 years. This option has been exercised.

The plaintiff or its subtenant, took possession of the two tracts on May 1, 1934, which were then burdened with a lien for delinquent taxes in the sum of more than $55,000, with penalties aggregating in excess of $120,000.

On August 1, 1935, Joseph L. Gill, the then county treasurer of Cook county, filed an original proceeding in the circuit court of Cook county, No. 35 C 12592, alleging delinquencies in the payment of taxes on the two tracts in question and praying that he be appointed receiver of the rents, issues and income for the purpose of collecting and satisfying the delinquent taxes.

The plaintiff filed its complaint in this case in the superior court of Cook county on August 6, 1935, seeking to enjoin the appointment of a tax receiver and asking that the leases in question "be construed with reference to the rights of the lessees therein . . . to pay general taxes . . . delinquent at the time of the coming into effect of said indentures of lease." The complaint also sought sanction for the payment

of delinquent taxes by the plaintiff and deduction of the amounts so paid from rents due and to become due under the leases. A temporary injunction was entered as prayed and the order appointing the tax receiver vacated.

In a proceeding then pending in the circuit court of Cook county, No. C 4614, on August 13, 1935, a decree was entered nullifying the trust instrument known as Trust 303 and the conveyance made by William Bromstedt to the trustee covering the corner tract. The decree found that when William Bromstedt died his widow—who already owned the contiguous 22-foot tract—became seized in fee of an undivided one-third interest in the corner tract and the five children of William Bromstedt, who prosecute this appeal, became seized in fee of the remaining two-thirds.

After entry of the decree in the circuit court No. 35 C 4614, finding ownership of the corner tract in the widow and five children, an amended complaint was filed reciting the facts and making them parties. The relief prayed was essentially the same as asked in the original complaint.

The plaintiff claims that on May 1, 1934, and on or about the first of each succeeding month thereafter, to and including July, 1936, it made legal tender of the rent and kept its tender good. From August, 1936, to date, the plaintiff has deposited the accruing rents with the clerks of the circuit and superior courts of Cook county under the provisions of orders entered in those courts, validity of which orders is challenged. It is admitted that none of the rentals reserved in either lease has ever been received by the fee owners. The five children served notice on the plaintiff and its subtenant on August 26, 1936, that they were the owners of an undivided two-thirds interest in the corner tract and that a default existed for nonpayment of

rent. No response was made to the notice. On June 21, 1937, the five children demanded two-thirds of the accumulated and accruing rentals of the corner tract, to which no response was made.

Paragraph eight of the lease gives the lessors the right to terminate the lease under specified conditions and provides: "in case of default in the payment of rent only Thirty (30) days' notice thereof to the Lessees shall be required in order to entitle Lessor to terminate this lease for such default."

The five children, as owners of an undivided two-thirds of the corner tract, served three notices of default on the plaintiff and its subtenant on February 7, 1938. The notices advised that unless the defaults were cured within 30 days the lessors would terminate the lease. The first notice specified a default in the payment of rent from May 1, 1934 to and including August, 1935. Those dates cover the period from the beginning of the term of the lease until the entry of the decree of the circuit court in case No. 35 C 4614 finding the children to be owners in fee. The second notice specified a default in the payment of rent from September, 1935 to and including July, 1936. Those dates cover the period from the entry of the circuit court decree finding the children to be owners in fee to the time the plaintiff began depositing the rent with the clerk of the circuit court. The third notice specified a default in the payment of rent from August, 1936 to and including January, 1938. Those dates cover the period during which the rental payments were deposited with the circuit court clerk. No response was made to such notices served on the plaintiff.

Because the defaults were not cured, the five children, 31 days later, on March 10, 1938, served three corresponding notices of their election to declare the term of the leases ended and demanding immediate

possession. No response to these notices and demands was made by the plaintiff, whereupon an amended and supplemental counterclaim was filed praying for a termination of the lease.

The Chicago City Bank and Trust Company as conservator of the Estate of Catherine L. Bromstedt, defended against the plaintiff's complaint on the ground that the plaintiff was not entitled to equitable relief against her, and further that neither lease was binding as to her. The conservator served no notice of default or election to terminate the separate lease on its ward's parcel; nor did it join in the notices of default or election to terminate the lease on the corner tract served by the five children owning the remaining undivided two-thirds interest. It did, however, sign a statement appended to each of the notices denying that the lease was binding on its ward or upon her interest in the premises.

It is conceded by the parties in interest that the taxes levied and assessed against the demised premises prior to May 1, 1934, because of the default of Schoenfeld in payment of the taxes as required by his lease, became and were the obligation of the lessors. Under the terms of the plaintiff's leases, plaintiff was obligated to pay all general taxes on the demised premises, beginning May 1, 1934, and all such taxes have been paid.

This court in the case of *Morrison v. Moir Hotel Co.*, 204 Ill. App. 433, passed upon a question involved in an action brought by the lessor under a lease to recover taxes which it was alleged the lessee was obligated to pay. It appeared from the provision of the lease that the lessee should "pay to the said lessor, his heirs, administrators, executors or assigns the said rent, in installments hereinafter specified for said demised premises, from April 30, 1911, together with all water rates, taxes and assessments . . . levied or

assessed annually, or from time to time upon the said demised premises.'' The court there said: ''We are of the opinion that this motion should have been allowed for the reason that under the lease the defendant was obligated to pay only those taxes levied or assessed after April 30, 1911 (the beginning of the term of the lease), and plaintiff failed to prove upon the trial that any of the taxes sought to be recovered were levied or assessed after that date.''

In the instant case it appears that the plaintiff is only obligated to pay the taxes from the beginning of the lease, May 1, 1934.

The Bromstedt heirs contend that they are relieved of any necessity of removing the lien of the unpaid taxes, because under the prior lease which the Bromstedts made with Schoenfeld, expiring April 30, 1934, and with which the plaintiff had no connection, Schoenfeld was obligated to pay the taxes. However, the unpaid taxes were a prior lien upon the premises in question, and Bromstedt having failed to pay the taxes, the county treasurer instituted the proceeding, to which we have called attention, for the appointment of a receiver to take possession of the premises and collect the rents and apply them to the payment of taxes then due. It does not appear from anything suggested by either party that there is any question as to the amount of taxes due, the question being whether the plaintiff has the right to pay the taxes and apply the rent as it accrues in payment of the amount of taxes due. The defendants contend that while the plaintiff has a right to pay the taxes, the court is without jurisdiction to entertain a bill in equity such as was filed in the instant case to restrain the appointment of a receiver as prayed in the petition filed by Joseph L. Gill, the county treasurer of Cook county, to collect the rents and apply them in payment of taxes. The defendants suggest that it is elementary

that equitable relief will not be afforded if there is an adequate remedy at law. By its pleadings and proof plaintiff has shown that it has an adequate remedy at law, and while the defendants do not claim that the plaintiff was under any legal or moral duty to discharge the delinquent taxes; nor that this is a proceeding to compel it to pay them, the primary obligation was that of Schoenfeld, and when he failed to pay, an arrangement was made by the owners of the fee with the county treasurer to pay in instalments, and suit was instituted to recover the amounts paid, and point to 36 Corpus Juris, 113, where it is said: "Further, the remedies for the recovery of taxes may render the lessee's property primarily liable therefor, and when he pays taxes to avoid the subjection of his property to their payment, he may withhold the amount paid from the rents, as a compulsory payment, or he may recover the amount so paid in an action against the lessor." Defendants cite other supporting authorities. However, that does not seem to be the question here. The plaintiff admits that it could pay the full amount of the taxes and then retain the rents to apply on moneys advanced until the amount is satisfied, but the answer to that is it would require the payment of a sum amounting to $120,000 to satisfy the lien for taxes and penalties, which would require the plaintiff to advance this considerable sum and thereby give the defendants the advantage of having their taxes paid by plaintiff's advancing the amount required.

Under the terms of the leases entered into on March 6, 1922, by Bromstedt individually with Lenz, Dehning and Meyn, and by Bromstedt as conservator dated March 9, 1922, the lessor in each case demised and leased the premises involved for a period of 99 years beginning May 1, 1934. It is contended by the plaintiff that in the court below the Bromstedt heirs

took the position that there was no obligation on the lessors under the leases in question to assure to the plaintiff the peaceful and quiet enjoyment of the premises in question. In this court plaintiff quotes the language used by the defendants in which this statement is made: "The lease contains no covenant on the part of the lessor to put lessee in possession, nor is there a covenant of quiet possession other than implied by law."

Our attention has been called to the case of *Harms v. McCormick,* 132 Ill. 104, upon this question, where the court said: "The words 'demise' and 'demised' in a lease, import a covenant on the part of the lessor, of good right and title to make the lease, and also imply a covenant for quiet enjoyment. (5 Am. and Eng. Ency. of Law, p. 538, title 'Demise,' note 1, and authorities cited therein; *Gazzolo v. Chambers,* 73 Ill. 75)." Also to the case of *Berrington v. Casey,* 78 Ill. 317, and *Wade v. Halligan,* 16 Ill. 507.

The defendants deny the assertion of the plaintiff that a covenant of quiet enjoyment is implied in every lease, but state that in their original brief they admitted that such a covenant was implied in the lease in dispute, and they repeat that admission but insist that until and unless plaintiff alleges and proves a breach of that covenant it is not entitled to any relief because of its existence, whether express or implied. So the plaintiff is entitled to a covenant of quiet enjoyment, which is implied in every lease, and of course the plaintiff must allege and prove that there was a breach of that covenant before he is entitled to relief on that particular point, and that must be disclosed by the allegations in the bill of complaint, as well as by the evidence submitted in support of the plaintiff's complaint.

The plaintiff calls to our attention that the taxes levied and assessed against the demised premises,

prior to January 1, 1934, were the obligation of the lessors. Under the terms of plaintiff's leases, plaintiff was obligated to pay all general real estate taxes on the demised premises, beginning with the year 1934, and all such taxes beginning at that time have been paid. The obligation to pay the taxes that are the subject of this discussion was that of one Schoenfeld, who was in possession under a lease expiring April 30, 1934, and the plaintiff suggests that it knew that Schoenfeld might fail to pay the taxes, and also had knowledge that the taxes would be a first lien on the property, and if not paid, a defect in the title of the lessor would arise. This is admitted by the defendants when they suggest that the entire discussion under this caption is to the point that such taxes were not the obligation of the lessee, and state that "in this we agree, and in our original brief, we said, 'We do not claim that plaintiff was under any legal or moral duty to discharge the delinquent taxes; nor is this a proceeding to compel it to pay them.'" So, from the suggestions that were made, the question arises as to what obligation there was for the plaintiff to pay the taxes which were the obligation of the lessor, and if payments were made were they to be treated as payment of rent.

The defendants' position in regard to this question is that if the nonpayment of taxes, regardless of the responsibility therefor, constituted an infringement of plaintiff's rights for which these defendants are liable, plaintiff had the right to pay them, become subrogated to the liens of the taxing bodies and obtain restitution out of future rents or recover the amount in an action therefor.

This suggestion seems to be clear, and it is a question of in just what manner will equity grant relief to the plaintiff in applying the rentals in payment of these taxes.

It would seem from the authorities that have been called to our attention that a tenant may undertake to pay taxes and deduct the amount out of the rent, for the landlord is bound to protect his tenant from all paramount claims. In Taylor on Landlord and Tenant (9th Ed.), the rule is stated as follows:

"A covenant is sometimes introduced into the lease, by which the tenant undertakes to pay the taxes; but, in the absence of such a covenant, the tenant may pay them, and deduct the amount of them out of the rent; for the landlord is bound to protect his tenant from all paramount claims. When therefore, a tenant has been compelled, in order to protect himself in the enjoyment of the land in respect of which his rent is payable, to make payments which ought, as between himself and his landlord, to have been made by the latter, he is considered as having been authorized by the landlord so to apply his rent, whether due or to become due." And again, in sec. 395 of the same work, it is said:

"As a general rule, the tenant is liable in the first instance to pay all taxes imposed upon the demised premises. The land itself, in the hands of the occupant, is in fact debtor to the public, and *prima facie* it is the tenant's tax, because the remedies are against him. He is, therefore, for his own protection, authorized to pay all such taxes and assessments, laid upon the premises for public improvements, as may be demanded of him, and to charge them to account of rent. . . . Nor is it necessary, to render the payment by the tenant involuntary, that the superior lord (i. e., the State) should threaten to distrain, for a demand, by one who has power to enforce his claim, is equivalent to compulsion; and such a payment is said to be no more voluntary than a donation to a beggar who presents a pistol. And if the sum paid by the tenant exceeds the rent due, the landlord will be bound to

repay such excess, as being money paid by the tenant to his use.''

Then follows the contention of the plaintiff that equity will afford relief against threatened forfeiture of a lease. As we have already suggested, plaintiff's leases carried with them a covenant of quiet enjoyment of the leased premises, and the obligation to pay taxes for the years prior to 1934, was the obligation of the lessors under the Schoenfeld leases, and not the obligation of the plaintiff.

The record states that on May 1, 1934, the plaintiff went into possession under the two leases. On that day it made tender to the Chicago City Bank and Trust Company of the full amount of rentals then due, aggregating $1,666.67. Plaintiff suggests that this tender was refused without explanation, and that like tenders were made on the first of each month thereafter, and upon refusal of each of such tenders, the rentals were deposited with the Continental Illinois National Bank and Trust Company, subject to withdrawal upon the order of the Chicago City Bank and Trust Company, and from the facts it appears that this situation prevailed from May, 1934 to July, 1935, inclusive. During this period, no attempt was made by the plaintiff to pay the delinquent and past due taxes, levied and assessed against the property for years prior to 1934, and it appears that on that day Joseph L. Gill, county treasurer and *ex officio* county collector of cook county, filed his complaint in the circuit court of Cook county against the Chicago City Bank and Trust Company, wherein he set forth that general taxes for the years 1928, 1929, 1930 and 1932 had been duly levied and assessed, that such taxes had been delinquent for more than six months, and that the total amount thereof was $55,678.64. Gill prayed that he be appointed the receiver of the rents, issues and income of the property, for the purpose of

collecting and satisfying out of the rents, issues and income, the delinquent taxes.

In the filing of its bill, the plaintiff sought the aid of a court of equity, and it appeared from this petition that the plaintiff's right of possession was questioned by the application for the appointment of a tax receiver by the county collector and by reason of this action the plaintiff was faced with the legality of a claim of forfeiture for nonpayment of rents by notice from the defendants, in the event it should pay taxes and seek to apply the amount thereof in payment of rentals.

It is clear from the record that there was no plan or offer by the defendants to pay the taxes, provided the plaintiff would pay the accrued rents. It would seem that they are interested more in receiving the income from this property than in making arrangements for payment of the taxes which are a lien upon the title in which they are interested. It is unreasonable to hold that by reason of notice to and failure of the plaintiff to pay the rents the defendants may forfeit this lease, when we consider that the plaintiff has deposited the money with a bank and the clerks of the circuit and superior courts, with the only request that he be permitted to satisfy the lien of the taxes which are in default, and which, of course would inure to the benefit of the defendants, in that the title would be clear and not subject to these defaulted taxes.

It is well to bear in mind that the interest of the plaintiff in this proceeding is an interest in real estate, for the reason that ch. 77, sec. 3, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 107.153], entitled, "Judgments, Decrees and Executions," provides:

"The term 'real estate,' when used in this act shall include lands, tenements, hereditaments, and all legal and equitable rights and interests therein and thereto, including estates for the life of the debtor or of an-

other person, and estates for years, and leasehold estates, when the unexpired term exceeds five years.'' And when we consider that plaintiff's interest is a real estate interest, we find from an examination of the Revenue Act, ch. 120, par. 238, sec. 253 [Jones Ill. Stats. Ann. 119.274] that:

''The taxes upon real property, together with all penalties, interests and costs, that may accrue thereon, shall be a prior and first lien on such real property, superior to all other liens and incumbrances, from and including the first day of April in the year in which the taxes are levied until the same are paid; which lien may be foreclosed in equity in any court of competent jurisdiction in the name of the people of the State of Illinois, whenever the taxes for two or more years, upon the same description of property, shall have been forfeited to the state, and may be sold under the order of the court by the person having authority to receive state and county taxes. . . .'' So that a lien was created which covers the subject of this leasehold, and considering all the facts and circumstances as they appear in the record, the plaintiff was fully justified in proceeding in equity for the purpose of having the court declare whether he could use the accrued rentals for the purpose indicated.

One of the authorities which has been submitted to this court and which we think has an important bearing upon the matter is *Illinois Merchants Trust Co. v. Harvey,* 335 Ill. 284. The court passed upon the question of jurisdiction of a court of equity to prevent threatened forfeiture of a lease, and this controversy turns upon whether or not the trustees of the residuary estate of Marshall Field were entitled to recover the income tax they had paid to Harvey. This tax amounted to $8,350.97, and the value of the leasehold estate was $2,000,000. The trustees of the residuary

estate of Marshall Field contended that they were not
liable for such income tax under their lease with Har-
vey, and Harvey thereupon served notice of his inten-
tion to forfeit the lease if the tax was not paid. The
court said:

"The chief contention of plaintiff in error is that
defendants in error were entitled to maintain a bill
in equity to prevent the threatened forfeiture. De-
fendants in error concede that if this be true the pay-
ment was not compulsory, but they contend that a bill
in equity would not lie because they had a remedy at
law,—that is, to pay and sue to recover the amount,
as they did, and that this was their only remedy at law.
We are unable to adopt this reasoning, for it decides
for defendants in error the main question in the case,
—that is, whether they had a right to pay and recover,
—and then uses such decision as a logical premise to
prove that the case should be decided in favor of the
payor. This overlooks the fact that the payor is seek-
ing in this suit not to avoid a forfeiture but to re-
cover money paid on an illegal demand. If he may
avoid the payment of such demand by resorting to a
remedy in equity but does not avail himself of such
remedy the payment is not compulsory even though
pressure for payment is re-enforced by a threat to
commit injury."

This rule as announced justified the plaintiff in fil-
ing the bill in equity for the purpose of asking the
court's direction with reference to the use of the rental
money which accrued in the payment of taxes. The
court continued: "It is of the nature of equitable
relief that it may be granted to obviate the effect of
an act which the other party has a right to perform
but by which he in equity and good conscience should
not be allowed to benefit. Equity jurisprudence pro-
ceeds on the ground that a party having a legal right

shall not be permitted to avail himself of it for the purpose of injustice, fraud, oppression or harsh and vindictive injury. (3 Story's Eq. Jr. — 14th ed. — sec. 1728;) . . . We are unable to see any difference between a right given by statute and one arising from any other source. The basis of the relief is that the defendant is seeking to exercise a right which he has but which he should not be permitted to exercise.'' How well that applies to the case now before this court. Here the defendants want the money which accrued for the rent, but do not offer any plan whereby they will pay the defaulted taxes which are a lien as indicated, and they want to destroy the value of the 99-year leasehold that is now owned by the plaintiff in the action.

*Illinois Merchants Trust Co. v. Harvey,* 335 Ill. 284, was followed by this court in the case of *Mayer v. Collins,* 263 Ill. App. 219. This court there sustained a bill to enjoin the threatened forfeiture of a lease, and in following the *Harvey* case, said:

''It is a well recognized principle that it does not follow that, because a remedy at law is afforded in a case, equity will not also take jurisdiction of the same state of facts. If the remedy in equity is more adequate because of special circumstances in the situation, the jurisdiction of equity will be sustained. *Warfield-Pratt-Howell Co. v. Williamson,* 233 Ill. 487. In *Chapman v. American Surety Co.,* 261 Ill. 594, it was said: 'No branch of equity jurisdiction is more frequently invoked. The use of injunctions to stay actions at law was substantially coeval with the establishment of chancery jurisdiction. That jurisdiction was largely built up through the instrumentality of injunctions in restraining the prosecution of legal actions where the aid of chancery was sought because the equities of the case could not be considered in the common law action.' And, further, that equity juris-

diction is for the purpose of prohibiting litigants from resorting to legal jurisdiction, 'because the controversies involve equitable features which can only be fully and finally determined in a tribunal having equitable jurisdiction.' There are many other similar cases.'' And the opinion of the Appellate Court seems to sustain the theory that even where there is jurisdiction to maintain an action at law, still the aid of chancery is sought because the equities of the case could not be considered in a common law action, and this is true in the instant case. Defendants expect the plaintiff to pay the rent, and then if the plaintiff uses the rent to pay the taxes, they still expect, unless the rent is paid, that legal title in plaintiff will be at an end. The court finally said:

''We cannot agree with the proposition advanced by defendant that a court of equity will not grant relief from the forfeiture of a lease for a cause other than the nonpayment of money in the absence of fraud, etc.'' In the *Harvey* case the court cited with approval a number of cases passing upon the question of when forfeitures will be enforced by courts of equity. The cases quoted from are *Springfield & Northeastern Traction Co. v. Warrick,* 249 Ill. 470; *Lehigh Valley Coal Co. v. Searle & Stark Heirs,* 248 Pa. 385; *Abrams v. Watson,* 59 Ala. 524; *Atkins v. Chilson,* 52 Mass. 112 and *Ostenberg v. Scottsbluff Inv. Co.,* 106 Neb. 143. From the authorities cited and the facts as they appear in the bill of complaint, we are satisfied that the court had jurisdiction to enter the decree appealed from in this action.

The question still to be considered is whether the Bromstedt heirs, defendants, are entitled to a decree of forfeiture of plaintiff's lease. They base their contention on the facts as they appear in the record, and we cannot add very much to what we have already said upon this question. We have indicated that the

Bromstedt heirs, as defendants, are not entitled to a decree of forfeiture of plaintiff's lease. The question is raised as to whether the plaintiff has properly made a tender, which was kept good in the manner made by the plaintiff. There is one subject, however, that might be important, as well as interesting, and that is that the tender made in an equity proceeding is somewhat different from that made at law, and it appears from the statement made in this bill that the plaintiff made a deposit of the money as we have indicated, and that this money was within the control of the court and by the application made by the court, it was made so as to protect the rights and interests of all parties to the litigation.

The decree is affirmed.

*Decree affirmed.*

DENIS E. SULLIVAN, P. J., concurs, and BURKE, J., takes no part.