601 WEST 81st STREET CORPORATION *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants and Cross-Appellees.
THE CITY OF CHICAGO, Petitioner-Appellant, v. CHICAGO CITY BANK & TRUST COMPANY, Trustee, Defendant-Appellee.
First District (2nd Division)   Nos. 83—0853, 84—0666 cons.

Opinion filed December 11, 1984.

James D. Montgomery, Corporation Counsel, of Chicago (Lynn K. Mitchell, Jerome A. Siegan, Maureen Kelly Ivory, and Robert L. Janega, Assistant Corporation Counsel, of counsel), for appellants.

Bilandic, Neistein, Richman, Hauslinger & Young, Ltd., of Chicago (George E. Sang, of counsel), for appellees 601 West 81st Street Corporation and Miles Management Corporation.

Burke & Ryan, of Chicago (Thomas Burke, William Ryan, and Barry Springer, of counsel), for appellee Chicago City Bank & Trust Company.

JUSTICE O'CONNOR delivered the opinion of the court:

This is a consolidated appeal of a suit against the city of Chicago for rent (No. 83—0853) and a condemnation suit by the city as to a portion of the same property (No. 84—0666).

In the suit for rent, judgment was entered in favor of plaintiff-lessor 601 West 81st Street Corporation (601 West) and against defendant-lessee city of Chicago (the city) for $223,234.74 consisting of (a) $233,352.00 for rent for 56 months, (b) interest at 5% for vexatious and unreasonable delay, amounting to $27,092.94, and (c) less a setoff for nonpayment of real estate taxes by the lessor for the years 1972 through 1977 in the amount of $37,210.20. The city appeals, seeking reversal of the judgment; 601 West cross-appeals from the setoff of $37,210.20.

In the condemnation suit, the city appeals from the judgment entered against it in favor of Chicago City Bank & Trust Company (City Bank) in the amount of $125,000 for damages to the remainder. It does not appeal from the judgment of $625,000 for the taking.

The record shows that Miles Management Corporation (Miles) was the beneficiary of Chicago City Bank & Trust Company land trust No. 7449. The real estate in that land trust was approximately 13 acres located in the 600 block of West 83rd Street in Chicago. On December

15, 1971, Miles leased 9.64 acres of that property (600-608 West 83rd Street) to the city for five years for use as an automobile pound at a rental of $4,167 per month. On or about January 5, 1979, Miles directed City Bank to convey title to 601 West, a subsidiary corporation. Conveyance of title was made subject to the lease, and 601 West so accepted the title. The city paid the monthly rental through July of 1978. It has paid no rental since then, but still continues to use the property as a car pound. It refused to pay on the ground that the lessor had failed to pay certain real estate taxes on the property due the county of Cook as required by the lease which provided in part: "Lessor [Miles] shall pay real estate taxes and any possible leasehold taxes."

Miles failed to pay the real estate taxes on the property for the years 1972 through 1977. Ultimately, after a scavenger tax sale in October 1979, 601 West redeemed the property for the amount bid at the scavenger sale. The 1978 taxes were paid by 601 West in 1981. No tax payments have been made since then because 601 West was unable to pay the taxes for 1979, 1980 and 1981. Its annual gross revenue from all its real estate was approximately $15,000. 601 West has made demands on the city for the rent for the remainder of 1978 and for the subsequent years up to the filing of its suit March 19, 1982.

The city's annual budgets have an account for the rental of two car pounds. The 1982 appropriation was sufficient to include rent for the 83rd Street auto pound; the 1981 appropriation was not, although funds could be spent without an appropriation with proper approval.

On March 19, 1982, 601 West and Miles filed suit against the city for rent and other relief.

On April 7, 1982, the city filed a condemnation suit to acquire the same 9.64 acres it had leased from 601 West. The suit named as defendants Chicago City Bank & Trust Company, as trustee under trust No. 7449, Ivan Himmel, Miles Management Corporation, 601 West 81st Street Corporation and unknown owners. On September 8, 1982, the city reduced its taking to 7.8262 acres.

On March 11, 1983, after a hearing in the suit for rent, the trial court found that (a) 601 West was entitled to 56 months' rental at $4,167 per month; (b) the city's failure to pay rent in a timely fashion was vexatious and unreasonable, for which 601 West was entitled to 5% interest in the amount of $27,092.94; (c) the real estate taxes for the years 1972 through 1977 were not paid by Miles except by redemption by 601 West after a scavenger tax sale in October 1979; and (d) the city is entitled to an equitable setoff in an amount equal to the sum total of tax dollars from the property that would have inured to

the city between 1972 and 1977. That amount was found to be $37,210.20. Judgment was entered against the city for $223,234.74.

On May 27, 1983, defendants in the condemnation proceeding filed a petition to compel the city to make rental payments. The petition alleged that the city had used the premises as an auto pound under the 1971 lease, but had not tendered rent since July 1978. It further alleged that defendants on March 11, 1983, had obtained a judgment for that back rent in the cause which is the appeal in No. 83—0853, but that the city has continued to occupy the property without paying rent. Defendants asked for the lease rental payments of $4,267 per month. In response to this petition, the parties executed an agreement entitled "stipulation" in which the city agreed to pay defendants $36,000 as back rent from March 11, 1983, to December 11, 1983.

On September 26, 1983, the city further amended its petition to condemn to increase its taking to 8.9768 acres. On the same day, 601 West filed a cross-petition alleging damages to the remainder of its property. By agreement the court ordered:

"1. Leave is granted to amend the taking in accordance with petition.

2. The cross-petition of the defendant is allowed.

3. The valuation date in this matter shall be September 26, 1983.

4. The trial is set for October 27, at 10 a.m."

On October 3, 1983, the city moved to vacate that part of the order which set the valuation date of September 26, 1983. After a hearing that motion was denied.

Jury trial in the condemnation suit commenced on November 29, 1983. On December 2, 1983, the jury returned a verdict for $625,000 for acquisition of the fee title to the property condemned and for $125,000 for damages to the land not taken. On the same day judgment was entered on the jury's verdict and the city was directed to deposit within 120 days with the treasurer of Cook County the sum of $750,000 plus statutory interest. In addition, the order retained jurisdiction for the purpose of awarding a writ or writs of assistance to put the city in possession and also provided:

"It is further ordered that the terms and conditions of this judgment order shall apply to the stipulation of the parties previously made a part of the record herein and attached hereto and made a part hereof as Exhibit A."

The stipulation stated:

"IT IS HEREBY STIPULATED by mutual agreement of the

parties that there is due and owing to the defendants in this cause, the lessors of the subject property, the amount of $36,000 representing delinquent rent heretofore not paid by the City of Chicago. The court finds, by agreement of the parties, that this amount was withheld without cause and was tantamount to a taking of the subject property.

IT IS ALSO AGREED by the parties hereto that this rent covers all delinquencies from March 11, 1983 to December 11, 1983. It does not, however, cause any cessation of rents due to the lessor after December 11, 1983, unless and until the City of Chicago is in title."

On December 27, 1983, the city moved for a new trial, contending for the first time that the city's cross-petition for damage to the remainder was legally insufficient. The motion was denied. On February 9, 1984, the city's motion for a new trial was denied. On April 30, 1984, the city paid City Bank $36,000 in satisfaction of the stipulation.

In the suit for rent the city appeals, contending that (a) it had a valid reason for not paying rent and (b) the trial court improperly awarded prejudgment interest. 601 West cross-appeals from the setoff of the $37,210.20 for taxes.

In the condemnation suit, the city appeals contending that because the city's cross-petition was illegally insufficient the circuit court lacked jurisdiction and the verdict for $125,000 for damages to the remainder is void.

THE SUIT FOR RENT

The city argues that it was justified in not paying rent from July of 1978 because the lessor (originally Miles and later 601 West) failed to pay the real estate taxes. This, the city argues, constituted a breach of a material term of the lease and thus it was relieved of its obligation to pay rent. We disagree.

■ It is well settled that, in the absence of an agreement on the part of a lessee, it is the duty of the owner of land to pay all taxes and special assessments; in order for the lessor to shift the obligation to pay taxes from itself to the lessee, the lease must express this shift in clear, concise terms. *Metropolitan Airport Authority v. Farliza Corp.* (1977), 50 Ill. App. 3d 994, 366 N.E.2d 112.

In *McArdle v. Courson* (1980), 82 Ill. App. 3d 123, 402 N.E.2d 292, *appeal denied* (1980), 81 Ill. 2d 593, the court succinctly observed:

"We are unaware of any authority in this State for permit-

ting a commercial tenant to both remain in possession and refuse to pay rent when a landlord breaches a covenant of the lease, unless the terms of the lease so provide." *McArdle v. Courson* (1980), 82 Ill. App. 3d 123, 126.

The lease provides, "Lessor shall pay real estate taxes and any possible leasehold taxes." There is no provision in the lease specifically providing sanctions for a breach of the failure to pay the real estate taxes.

■ The lease also states the Lessee's (the city's) obligations: "Assessments for water tax levied against said premises for all or part of the term of the lease shall be paid by the Lessee, also driveway permit fees." These latter provisions merely clarify the position of the parties as to the allocation of the payment of various taxes. They do not make the payment of real estate taxes by the lessor a condition precedent to the payment of rent by the city. The lessor's obligation to pay the taxes is independent of the lessee's duty to pay rent.

■ The obligation to pay rent is a continuing one. The court so stated in *Lipkin v. Burnstine* (1958), 18 Ill. App. 2d 509, 518, 152 N.E.2d 745:

> "The lessor's right to receive rent continues so long as the lessee elects to remain in possession, even though the lessee may ultimately establish a right to rescind the lease, vacate the premises or obtain other relief. *Goldblatt v. Sixty-Third & Halsted Realty Co.*, 338 Ill. App. 543, 550."

Thus, the failure of the lessor to pay the real estate taxes did not deprive the city of its use and enjoyment of the premises. The latter continued to operate its auto pound in the same manner as it did under the lease and during the time it paid rent. It did nothing with regard to the lessor's failure to pay the real estate taxes. Eventually, in 1982, it filed suit to condemn the property.

■ The city's position is not supported by *Sixty-Third & Halsted Realty Co. v. Chicago City Bank & Trust Co.* (1939), 299 Ill. App. 297, 20 N.E.2d 162, *appeal denied* (1939), 301 Ill. App. xxxv. In that case, the plaintiff-lessees sought to pay delinquent taxes from accumulated rents paid to the court clerk and also sought to enjoin the appointment of a tax receiver through the county collector's office. The delinquent taxes were originally to be paid by a previous lessee. (In the case at bar, the real estate taxes were the obligation of the lessor.) The defendant-lessors did nothing to relieve the tax liability on the property. After the tenants started paying rent to the clerk of the court the lessors gave notice of default and forfeiture. Thus, the delinquent taxes caused the lessees' use and enjoyment of the property to

be disturbed because the county collector wanted a receiver appointed and the lessors had given notice of forfeiture. The appellate court suggested the remedy for a lessee in this situation would be to pay the taxes and make deductions from rent paid to the landlord. Because the lessees had made rent payments to the court clerk, the court held it was not equitable to allow the landlord to have a forfeiture by reason of refusal to pay rent. The case at bar is readily distinguishable. The city, in the case at bar, had a continuing duty to pay the rent. It did nothing to relieve the tax liability.

The trial court correctly entered judgment for 601 West for 56 months' rent in the amount of $233,352.

The city contends that the trial court erred in awarding prejudgment interest. We agree.

■ Prejudgment interest is recoverable only on the basis of contract or statute. (*First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403, 450 N.E.2d 833, *appeal denied* (1983), 96 Ill. 2d 539.) The lease here did not provide for interest. Section 2 of the Interest Act (Ill. Rev. Stat. 1983, ch. 17, par. 6402) provides in pertinent part:

> "Sec. 2. Creditors shall be allowed to receive at the rate of five (5) per centum per annum *** on money withheld by an unreasonable and vexatious delay of payment."

Under the statute, " 'It has been consistently held that in order to collect interest on a theory of unreasonable and vexatious delay, the evidence must show that the debtor had thrown obstacles in the way of collection or by some circumvention or management of his own had induced the creditor to delay taking proceedings to collect the debt longer than he would have otherwise done.' " *Bise's Supermarket, Inc. v. Valley Forge Insurance Co.* (1977), 48 Ill. App. 3d 822, 827, 363 N.E.2d 186, quoting from *Kespohl v. Northern Trust Co.* (1970), 131 Ill. App. 2d 188, 191, 266 N.E.2d 371. See also *Pietka v. Chelco Corp.* (1982), 107 Ill. App. 3d 544, 558, 437 N.E.2d 872, where the court added "or such claimant must establish conduct on the part of his opponent which is tantamount to fraud."

■ Although the city stopped paying rent in July of 1978, allegedly because of the lessor's failure to pay real estate taxes from 1972 through 1977, it did nothing to prevent 601 West from filing suit to collect the rent. Nevertheless, 601 West delayed 3½ years (August 1978 until March 1982) before suing for back rent. Under these circumstances we find that the city's failure to pay rent was not "vexatious and unreasonable" under the statute. That part of the judgment awarding interest in the amount of $27,092.94 is reversed.

In its cross-appeal 601 West contends that the trial court errone-ously allowed the city a setoff of $37,210.20 against the judgment. This amount is the portion of the real estate taxes for the years 1972 through 1977 which would have inured to the benefit of the city. We find that this setoff was in error.

At the time in 1979 when 601 West redeemed the property, the applicable statute, familiarly known as the Scavenger Act, provided (Ill. Rev. Stat. 1979, ch. 120, par. 716a):

> "Redemptions may be made from sales pursuant to this Section in the same manner and upon the same terms and conditions as redemptions from sales made pursuant to the County Collec-tor's annual application for judgment and order of sale except that in lieu of penalty the person redeeming shall pay interest at the rate of 1% per month on the amount for which the premises were sold for each of the first 6 months or fraction thereof from the date of sale and thereafter at the rate of 6% per annum where the sales were pursuant to judgments en-tered before August 1, 1965. Where the sales were pursuant to judgments entered on or after August 1, 1965 the person re-deeming shall pay interest as follows ***."

That paragraph also provided:

> "Upon confirmation, a sale pursuant to this Section shall extin-guish the lien of the general taxes, special taxes and special as-sessments for which judgment has been entered and shall extin-guish all forfeitures therefor, and a redemption shall not revive the lien or the forfeiture."

Because 601 West redeemed the property in accord with the statute as it then existed, the lien of delinquent taxes was extin-guished. Having been extinguished, the lien could not be revived by the trial court by the device of granting a setoff. The equitable powers of a court may not be exercised to direct a remedy in contra-diction to the plain requirements of a statute. (*Aylward v. Dragus* (1980), 82 Ill. App. 3d 283, 402 N.E.2d 700.) Equity follows the law. (*Stuewe v. Lauletta* (1981), 93 Ill. App. 3d 1029, 418 N.E.2d 138.) Nothing in the terms of the lease authorized the court so to exercise its equitable powers. That part of the judgment granting a setoff in the amount of $37,210.20 is reversed.

Parenthetically, it should be noted that the statute provides that for sales taking place after January 1, 1980, the amount required to be paid for redemption "shall also include an amount equal to all de-linquent taxes on such property which taxes were delinquent at the time of sale" (Ill. Rev. Stat. 1981, ch. 120, par. 716a). As mentioned,

the sale here took place before that date. By the explicit terms of the statute as it existed at the time of redemption, the redemption did not revive the lien or forfeiture.

### THE CONDEMNATION SUIT

City Bank has moved to dismiss the appeal in the condemnation suit on the ground that the stipulated $36,000 was part of the condemnation judgment and that, since the city has paid that amount "in partial payment and satisfaction of judgment order in Case No. 82L6849, *City of Chicago v. Chicago City Bank and Trust Co.,*" that payment acts as a waiver of any error in the condemnation proceedings and of the city's right to appeal from that order under *County of Cook v. Malysa* (1968), 39 Ill. 2d 376, 235 N.E.2d 598. We disagree.

The stipulation and order are set out above.

At the beginning of the trial, the court read to the jury the stipulation, "It is hereby stipulated by mutual agreement of the parties that there is due and owing to the defendant in this cause, lessor of the subject property, in the amount of $36,000 representing delinquent rent heretofore not paid to the City of Chicago." The court then stated, "The court finds by agreement of the parties that the amount was without just cause and was tenement [tantamount] to the taking of subject property. It was also agreed by the parties here, too, that the rent covers March 11, 1983 to December 11, 1983. It does not have [bar], however, compensation of rent due to lessor after December 11, 1983 unless and until the City of Chicago is entitled, and that is executed by both of the parties. \*\*\* I will make it part of the record. \*\*\*"

It is apparent from the record that the stipulation was not actually part of the condemnation case as such, but was an independent, collateral matter joined in that case solely because of the separate petition filed to compel the payment of rent. It was referred to separately in the judgment order quoted above.

Further, none of the instructions given the jury mentioned the amount of $36,000. The verdict form given to and returned by the jury covered only the just compensation for the property taken and the damages to the remainder. No provision was made for the stipulated $36,000. The jury made no finding as to it; its verdict covered only two items: $625,000 for just compensation for the property taken and damages to the remainder of $125,000.

■ For these reasons, we find that the payment by the city of the $36,000 did not constitute a voluntary payment or acceptance of a condemnation award under *County of Cook v. Malysa* (1968), 39 Ill.

2d 376, 235 N.E.2d 598. The city, therefore, has not waived its right of appeal. The motion of City Bank to dismiss is denied.

Turning to the city's appeal, its sole contention is that the jury's verdict of $125,000 for damages to the remainder was void because the trial court did not have jurisdiction of that matter for the reason that the cross-petition filed was legally insufficient. We find that the city has waived its right to object to the claimed insufficiency of the cross-petition.

Circuit courts have original jurisdiction of all justiciable matters except where the Supreme Court has original and exclusive jurisdiction (Ill. Const. 1970, art. VI, sec. 9). The circuit court of the county in which the property is located has jurisdiction of eminent domain proceedings (Ill. Rev. Stat. 1981, ch. 47, par. 2).

The city filed its petition to condemn in the circuit court of Cook County. Because it described only the property sought and did not allege that it was only part of a larger tract, the owner, in order to recover damages to the remainder, was required to file a cross-petition for such damages. *Central Illinois Public Service Co. v. Rider* (1957), 12 Ill. 2d 326, 146 N.E.2d 48.

Chicago City Bank filed the following cross-petition on September 26, 1983:

"Now comes defendant, 601 West 81st Street Corporation, and alleges the real property as described in the petition to condemn herein, of which it is the owner or interested party, is part and parcel of a larger tract of land.

That as a result of the taking of the real property described in the petition to condemn, the remainder of the tract will be damaged and defendant respectfully requests that said damages be assessed in these proceedings."

That cross-petition was filed pursuant to the agreed order quoted above, which in part recited, "The cross-petition of the defendant is allowed." The city made no motion to strike the cross-petition. The jury was told at the outset of the trial that they were to consider the question of damages to the remainder. Evidence was introduced by both parties on that question without objection. The jury was instructed on the question; the city made no objection to the instructions nor to the verdict form given the jury. The matter was argued to the jury.

It was only after judgment that the city attempted to raise the question of the legal sufficiency of the cross-petition, relying on *Central Illinois Public Service Co. v. Rider* (1957), 12 Ill. 2d 326, 146 N.E.2d 48, which held that the jurisdictional requirements as to a

cross-petition are that it must describe with reasonable certainty the land which the owner feels will be damaged, aver that he is the owner and recite that that part will sustain damage by reason of the acts contemplated by the condemning party. In that case, however, a motion to strike the cross-petition was made and denied. In the case at bar, no such motion was made. On the contrary, the filing of the cross-petition was allowed in an agreed order.

■ Although lack of subject matter jurisdiction of a class of cases cannot be waived, the method by which jurisdiction of a particular case is acquired may be waived. (*Wilson Brothers v. Haege* (1931), 347 Ill. 140, 179 N.E. 459.) In *Taylor Coal Co. v. Industrial Com.* (1922), 301 Ill. 381, 384, 134 N.E. 169, the court said:

> "*** The general rule as applied to courts is, that jurisdiction of the subject matter,—which means jurisdiction of the class of cases to which the particular case belongs and not jurisdiction of a case within such a class,—cannot be waived. The method by which jurisdiction of a particular case within the general class of cases is obtained, and any defects or irregularities in respect thereto, may be waived, and are waived unless seasonable objection is made in accordance with the established practice. (*O'Brien v. People*, 216 Ill. 354; *Franklin Union v. People*, 220 id. 355.) Where a court has jurisdiction of the subject matter and may take jurisdiction of a particular case if certain conditions exist, and no objection is raised to the exercise of jurisdiction, as in case of a limitation barring a writ of error, an adequate remedy at law and the like, a party will be deemed to have waived the jurisdictional question. *Burnap v. Wight*, 14 Ill. 303; *Stout v. Cook*, 41 id. 447; *Crawford v. Schmitz*, 139 id. 564; *Hauger v. Gage*, 168 id. 365; *Law v. Ware*, 238 id. 360; *Peterson v. Manhattan Life Ins. Co.* 244 id. 329; *People v. Evans*, 262 id. 235."

■ Because (a) the circuit court had subject-matter jurisdiction, (b) the city agreed to the filing of the cross-petition, (c) the city failed to move to strike it, (d) the city participated in the trial on the question of damages and (e) failed to object to the instructions or verdict form as to damages to the remainder, the city has waived its right to contest the legal sufficiency of the cross-petition. The judgment for $125,000 for damages to the remainder is affirmed.

In the rent suit (No. 83—0853), that part of the judgment awarding $233,352 rent for 56 months is affirmed, that part awarding $27,092.94 interest is reversed; also reversed is that part granting a setoff for taxes in the amount of $37,210.20.

In the condemnation suit (No. 84—0666), the motion to dismiss the appeal is denied; the judgment for $125,000 is affirmed.

Motion to dismiss denied; affirmed in part and reversed in part.

HARTMAN, P.J., and DOWNING*, J., concur.

---

*Justice Downing participated in the above opinion before the expiration of his term in office.